915 F.2d 738
 286 U.S.App.D.C. 295
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Carolyn STROMAN.
 No. 88-3177.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 5, 1990.
 
 Before STEPHEN F. WILLIAMS, D.H. GINSBURG and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on an appeal from the United States District Court for the District of Columbia. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying opinion, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 It is FURTHER ORDERED that the clerk withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b).
 
 MEMORANDUM
 
 4
 Carolyn M. Stroman was tried before a jury and convicted on nine counts: one count of conspiracy to distribute and possess with intent to distribute cocaine (21 U.S.C. Sec. 846 (1988)), seven counts of unlawful use of a communication facility to facilitate the crimes of conspiracy and possession with intent to distribute cocaine (21 U.S.C. Sec. 843(b) (1988)) and one count of possession with intent to distribute cocaine (21 U.S.C. Secs. 841(a), (b)(1)(A)(ii) (1988)). The trial judge sentenced Stroman to 150 months' imprisonment, five years of supervised release and fifty hours of community service and imposed a $450 special assessment. Stroman appeals both the conviction and the sentence, asserting the trial judge erred (1) in submitting the conspiracy counts to the jury when the evidence was insufficient to support a conviction for conspiracy; (2) in admitting hearsay evidence, namely, recorded conversations between Carlos Beltran and Louis Scanga, both alleged coconspirators of Stroman; and (3) in employing the incorrect base offense level to sentence her. We find these arguments without merit and, accordingly, affirm both the conviction and the sentence.
 
 I.
 
 5
 In deciding this appeal, we must view the evidence in the light most favorable to the government, allowing the government the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. United States v. Sutton, 801 F.2d 1346, 1358 (D.C.Cir.1986). So viewed, the evidence reveals the following material facts.
 
 
 6
 Stroman, a Washington D.C. resident, met Beltran, then a resident of Miami, Florida, in a Miami hotel in early 1987 and purchased seven grams of cocaine from him. About one month later, Stroman telephoned Beltran and the two reached an agreement for Stroman to purchase three kilograms of cocaine. Stroman was to pay cash for one kilogram and Beltran was to "front" the remaining two. Pursuant to their arrangement, Stroman travelled to Miami and picked up the three kilograms from Beltran. The two then flew together to Washington, with the cocaine concealed in a piece of luggage carried by Stroman. When they arrived in Washington, Beltran registered at a motel in Crystal City, Va., where Stroman paid him the remaining purchase price later that evening.
 
 
 7
 About three to four weeks later, in March or April 1987, Stroman called Beltran again, requesting three to four kilograms of cocaine. This time, Beltran arranged to have the cocaine transported to the Washington area by car, while he himself flew to Washington and again registered in a Crystal City motel. When the cocaine arrived, Beltran picked it up from the driver and took it back to his hotel room where he delivered it to Stroman, fronting the entire amount. Stroman returned to Beltran's room later that evening and paid him for the drugs. During the summer, Stroman and Beltran conducted two more transactions, following the same procedure, in which Stroman purchased a total of seven to eight kilograms.
 
 
 8
 In early September, Stroman made another purchase from Beltran, but this time Beltran delivered the cocaine and Stroman later paid him the money in a Washington, D.C., parking lot. On that occasion, Beltran fronted Stroman four to five kilograms. During the next few months Beltran and Stroman conducted three or four similar sales in the same parking lot, the last occurring in late November 1987.
 
 
 9
 In January 1988, Beltran decided to move back to Miami and left the Washington end of his operation in the hands of Louis Scanga, to whom he had previously been selling cocaine. Before his departure, Beltran informed Stroman that she would receive future deliveries from someone else although he did not identify Scanga by name. After his return to Miami, Beltran continued the cocaine operation, arranging for the shipments to be transported from Miami to Washington by various drivers and for the sale proceeds to be returned to Miami by John Opal, who worked for Scanga.
 
 
 10
 Stroman purchased no more cocaine from Beltran until March 1988 when she bought an undisclosed portion of a large shipment. That purchase was negotiated in part through Opal who informed Stroman that the delivery would be made by a person named "Daryl." During the second week in April, when the entire shipment had been sold, Stroman, at Beltran's request, travelled to Miami and delivered the proceeds to Beltran. While in Miami, she discussed with Beltran another cocaine shipment he planned to send to Washington shortly, leaving Beltran with the impression she would purchase some of it. That shipment arrived in Washington on April 18, 1988, and Stroman arranged a purchase through Opal. Before the cocaine could be delivered, however, both Opal and Scanga were arrested, on April 20, 1988. One week later Beltran was also arrested. Through subsequent conversations with Beltran and Opal, who were then cooperating with federal agents, and with a federal undercover agent, Stroman arranged to purchase ten kilograms of cocaine. On May 18, 1988, the undercover agent sold the ten kilograms to Stroman and her sister and then arrested them both.
 
 
 11
 Stroman and her sister were tried before a jury on September 9-14, 1988. During the trial, the district judge, over Stroman's objection, admitted the government's exhibits 1 and 2, consisting of two recorded conversations between Beltran and Scanga. In the course of those conversations, which took place on April 22 and 26, 1988, the speakers discussed Stroman's desire to purchase cocaine and Opal's attempts to contact her. At the close of the trial, the jury found Stroman guilty on all nine counts.
 
 
 12
 The trial judge conducted a sentencing hearing on November 18, 1988. Applying the United States Sentencing Guidelines and adopting the recommendation in the presentence report, the judge assigned Stroman a base offense level of 34, which included a two-point reduction for acceptance of responsibility. The judge then sentenced Stroman to 150 months' imprisonment, to be followed by five years of supervised release and fifty hours of community service, and imposed a $450 special assessment to be paid during the first six months of supervised release.
 
 
 13
 Stroman has appealed both the conviction and the sentence, asserting (1) there was insufficient evidence of conspiracy to submit the conspiracy counts to the jury, (2) the recorded conversations were inadmissible hearsay and (3) Stroman's final offense level under the guidelines should have been 30, rather than 32. We address each of these contentions separately.
 
 II.
 
 14
 First, Stroman asserts the trial judge erred in submitting the conspiracy counts to the jury because there was insufficient evidence to show she was a participant in the conspiracy. Specifically, she asserts there is no evidence that (1) she was anything more than a drug buyer, (2) she ever had any dealings with Scanga or (3) that she "played a vital role" in the conspiracy. We find the evidence sufficient to support the jury's verdict on the conspiracy charges and, accordingly, reject Stroman's first ground on appeal.
 
 
 15
 In United States v. Sobamowo, 892 F.2d 90 (D.C.Cir.1989), three street level dealers appealed their convictions on charges of conspiracy to distribute heroin and to possess heroin and unlawful use of a communication facility on the ground, among others, that the evidence was insufficient to support conspiracy convictions. This Court stated then:
 
 
 16
 Drug distribution enterprises such as this one, involving a "chain" composed of importers, middlemen, and street dealers, have been appropriately tried on a conspiracy theory.... "Under the chain analysis, the Government need not prove a direct connection between all the conspirators. A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants...."
 
 
 17
 892 F.2d at 94 (quoting United States v. Tarantino, 846 F.2d 1384, 1392 (D.C.Cir.), cert. denied, 488 U.S. 867 (1988)) (citations omitted). The Court further cited "evidence that the defendants were aware of the structure of the enterprise and the participation of third parties" and found that evidence "sufficient to support the convictions." Id. at 94-95. So here, the evidence supports a finding that Stroman was aware of the scope and structure of the conspiracy and of the necessity for other participants. The facts, as set forth above, show Stroman was familiar with Beltran's method of distributing cocaine from Miami to Washington, dealt directly with Beltran in Miami, knew others were involved in the conspiracy, including Opal, a courier named Daryl and, at least indirectly, Scanga, and on one occasion herself transported proceeds from Washington drug sales to Beltran in Miami. It is immaterial that Stroman may not have known the identity of each of the conspirators or even of a major one, such as Scanga, given her knowledge of the conspiracy's scope and structure. See Tarantino, 846 F.2d at 1392. Accordingly, we conclude the evidence of conspiracy was sufficient to support the jury's verdict.
 
 III.
 
 18
 Next, Stroman appeals admission of the recorded conversations between Beltran and Scanga on the ground they constitute inadmissible hearsay. We find no merit in this position.
 
 
 19
 The district judge admitted the conversations under Federal Rule of Evidence 801(d)(2)(E) which states:
 
 
 20
 (d) Statements which are not hearsay. A statement is not hearsay if--
 
 
 21
 .............................................................
 
 
 22
 ...................
 
 
 23
 * * *
 
 
 24
 (2) Admission by Party Opponent. The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy.
 
 
 25
 Before a statement can be admitted under this subsection, there must be evidence both that there was a conspiracy involving the declarant and the nonoffering party and that the statement was made during the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Stroman contends the conversations are not admissible because there was no evidence they were made in the course of a conspiracy involving her. We disagree.
 
 
 26
 The declarations to which Stroman objects were made by Beltran and concern Stroman's desire to obtain cocaine and her unsuccessful attempts to contact Opal. As we have already concluded, there was ample evidence to show that Stroman, the nonoffering party and Beltran, the declarant, were co-conspirators in Beltran's drug distribution operation. Further, Beltran's declarations were made in the course and in furtherance of the conspiracy because they relate to Stroman's efforts to obtain cocaine from Beltran through Opal. Given these facts, we find no error in admission of the recordings.
 
 IV.
 
 27
 Finally, Stroman appeals her sentence, asserting the trial judge improperly calculated her base offense level. Under the federal sentencing guidelines' drug quantity tables, the base offense level for crimes involving fifteen kilograms or more of cocaine is 34, while the base level for fewer than fifteen kilograms is 32. U.S. Sentencing Guidelines Sec. 2D1.1. The presentencing report, relying on Beltran's trial testimony, concluded Stroman had purchased a total of 43 kilograms of cocaine and therefore recommended a base offense level of 34 which, when reduced by two points for acceptance of responsibility, yields a final level of 32 and subjects Stroman to a guideline imprisonment range of 121-151 months. See id. Sec. 5A. The judge adopted the recommendation in the report and set Stroman's final offense level at 32. Stroman contends the base offense level should have been only 32, the level for crimes involving fewer than 15 kilograms, which when reduced by two points for acceptance of responsibility would yield a total level of 30 and subject Stroman to an imprisonment range of 97-121 months. See id. Stroman reasons that in calculating the base offense level, the judge should have considered only the ten kilograms of cocaine seized from her upon her arrest, and not the cocaine in the earlier transactions to which Beltran testified because the earlier quantities were not charged in the indictment and because Beltran's testimony is inherently unreliable. We reject these arguments for two reasons.
 
 
 28
 First, the indictment itself apparently charged Stroman with criminal activity involving fifteen kilograms, namely, possession of ten kilograms and conspiracy involving five separate one kilogram transactions.[1]
 
 
 29
 Second, as Stroman herself concedes, courts considering the issue have concluded that, in computing the base offense level, a sentencing judge may consider uncharged drug quantities which are involved in the same scheme or conspiracy as the drug quantities included in the indictment. See United States v. Smith, 887 F.2d 104, 106-09 (6th Cir.1989); United States v. Vinson, 886 F.2d 740, 742-43 (4th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). Thus, the district judge here could consider all of the cocaine supported by the evidence. The trial judge found that, whether or not 43 kilograms was the correct amount, the evidence established "there were many kilograms of cocaine changing hands between Beltran and Ms. Stroman" so as to justify a base offense level of 34. Because this finding is adequately supported in the record, we defer to the judge's credibility determinations and accept her finding and the resulting sentence. 18 U.S.C. Sec. 3742(d) (1988).
 
 
 30
 For the preceding reasons, the judgment of the district court is in all respects
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 The indictment is not included in the appellate record but, from the transcript of the sentencing hearing, this appears to be its substance. See Transcript of Sentencing at 5-6