UNITED STATES of America,
Plaintiff–Appellee,

v.

Walter Warren VINSON,
Defendant–Appellant.

No. 89–5509.

United States Court of Appeals,
Fourth Circuit.

Argued July 26, 1989.

Decided Oct. 4, 1989.

Rodney Shelton Toth (James F. Wyatt, III, Charlotte, N.C., on brief), for defendant-appellant.

Harry Thomas Church, Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

Walter Warren Vinson was convicted of one count of conspiracy to unlawfully possess with intent to distribute and distribute thirty kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced under the Sentencing Guidelines to sixty months imprisonment, plus five years supervised release and a $5,000 fine. He challenges the sentence imposed on him under the Guidelines. Finding no error, we affirm.

I.

On February 2, 1988, Vinson was indicted in the Western District of North Car-

---

olina on a single count of conspiracy to possess cocaine with intent to distribute and to distribute, along with eleven others, thirty kilograms of cocaine from about April 1, 1987, through about January 18, 1988. According to the indictment, the cocaine was transported to North Carolina by co-indictee John Edward Comer, who in turn utilized a redistribution network which he had established. Vinson was alleged to be a member of this redistribution network. Vinson cooperated with government investigators and, in return, the government agreed to request that any sentence imposed not exceed five years imprisonment.

Prior to sentencing, a presentence report was prepared by the court's probation officer. Guidelines § 6A1.1. Based on interviews with a federal agent, David Ramsey, the probation officer noted in his report that Vinson "probably was responsible for assisting Comer in getting involved in the cocaine business." Also, the report stated that "Vinson allegedly introduced Comer to a number of contacts and was initially one of Comer's lieutenants until he became 'slack' in paying for cocaine and thus moved down the hierarchy to about the third-man level position."

The probation officer began his sentence calculation by using the base offense level for a crime involving cocaine of between 15 and 49.9 kilograms. Guidelines § 2D1.1(a)(3). This level of 34 was increased by 2 levels due to the probation officer's finding that Vinson was at one time a supervisor in the criminal activity. Guidelines § 3B1.1(c). The offense level was then decreased by 2 levels for acceptance of responsibility. Guidelines § 3E1.1(a). Based on a total offense level of 34 and a criminal history category of I, the guideline range was determined to be 151–188 months. Guidelines Chap. 5, Part A. The statutory sentence range was stated to be a minimum of ten years to a maximum of life.[1] The report concluded by

noting that the plea agreement required the government to recommend a departure from the guidelines sentence on the basis of Vinson's "substantial assistance." Guidelines § 5K1.1.

Vinson filed an objection to the presentence report. Guidelines § 6A1.3(a). The crux of his objection was that he purchased less than ½ kilogram of cocaine from Comer for personal use only, that his involvement with Comer ended in May, 1987, after his (Vinson's) arrest on state charges, that he neither knew of nor participated in the overall conspiracy, and that he never sold or transported cocaine. Vinson points to a statement given by Comer to federal agent Ramsey which detailed Vinson's involvement. According to Vinson, this statement substantiates his claim that he purchased only fourteen ounces, or 396.9 grams, of cocaine from Comer. At the December 19, 1988, sentencing hearing, Vinson's counsel stipulated that a factual basis for the plea of guilty existed on the basis of the evidence presented in an earlier trial involving one of Vinson's coconspirators. After the court announced that the plea was accepted, Vinson's counsel reiterated his objections to the presentence report. The court accepted the presentence report and granted the government's motion for a downward departure on the basis of Vinson's "substantial assistance." The maximum sentence contemplated by the plea agreement, i.e. 60 months, was imposed.

## II.

■ On appeal, Vinson contends that the sentencing court was required under the due process clause to find beyond a reasonable doubt every fact necessary to increase the offense level under the Guidelines; alternatively, Vinson argues for a clear and convincing standard of proof for such facts. In *United States v. Urreqo-Linares*, 879 F.2d 1234 (4th Cir.1989), this Court adopted a preponderance standard

---

1. The report's statement that Vinson's conviction carried a statutory minimum term of ten years is incorrect. Vinson was convicted of conspiracy to violate § 841(a)(1) and not of the substantive offense itself. Therefore, the minimum penalty provisions of § 841(b)(1)(A) are

inapplicable. The only statutory restraint under § 846 is that the sentence may not exceed the maximum prescribed for the substantive offense. *United States v. Campbell,* 704 F.Supp. 661, 663–65 (E.D.Va.1989).

for the finding of facts made by a court during sentencing. Accordingly, we reject Vinson's contention that due process mandates a standard of proof more stringent than preponderance of the evidence.

### III.

■ Vinson also contends that the district court erred in sentencing him on the basis of the entire amount of cocaine charged in the indictment. For the purposes of this appeal, our review of the sentence is limited to a determination of whether the Guidelines sentence was imposed either "in violation of law ... [or] as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(e). This Court is required to accept the sentencing court's findings of fact unless they are clearly erroneous. *Id.*

According to the Commentary to Guidelines § 2D1.4, a defendant convicted of conspiracy should be sentenced "only on the basis of [his] conduct or the conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable." Since the base offense level in drug cases, both conspiracy and otherwise, is directly determined by the type and amount of drugs involved, the determination of the foreseeability of the extent of the overall conspiracy is often critical. This is clearly a question of fact which will only be overturned on appeal if it is clearly erroneous. If, as Vinson contends, his criminal conduct was limited to purchasing only 14 ounces for his own use, and further that it was not reasonably foreseeable that his codefendants would sell many times that amount during the life of the conspiracy, then a reconsideration of his sentence might well be in order. We do not, however, find that such is the case before us.

According to the summary of the statement given by Comer to the authorities, he met Vinson in November, 1985. In February, 1986, while still living in New Jersey,

he transported three ounces of cocaine from Florida to Charlotte and fronted it to Vinson. After moving to Florida in March, 1986, Comer stated that "he kept in touch with Vinson and that Vinson kept telling Comer that if Comer could get some cocaine cheap in Florida, that Vinson would sell it in North Carolina for Comer." When Comer began to transport cocaine on a regular basis beginning in early 1987, Vinson was apparently the first member of the redistribution network. From an initial amount of one ounce, Vinson was soon receiving multiple-ounce quantities which Comer stated were being resold by Vinson. As the network grew to include persons known to Vinson, the amounts transported by Comer grew as well. By the time Vinson was arrested on state drug charges in May, 1987, Comer had already transported cocaine to Charlotte on at least eight separate occasions. From the initial one-ounce sale to Vinson in early 1987, by May Comer was negotiating to buy a kilogram of cocaine from his Florida source. In the few weeks prior to Vinson's arrest, Comer had already sold or fronted in excess of two kilograms of cocaine to Vinson and the other members of the network for distribution.

Vinson's assertion of minimal involvement and knowledge has, in light of the very statements he relies upon, a hollow ring. It is clear from the statement that Vinson was Comer's initial contact in the Charlotte area, that Vinson actually urged Comer to transport cocaine from Florida for sale in the area, and that Vinson was buying increasingly larger amounts of cocaine from Comer on a regular basis. While his active involvement may have ended with his arrest in May, 1987, the conspiracy continued for another eight months. That the conspiracy would continue unabated was not only "reasonably foreseeable," it was practically a foregone conclusion. By the time of Vinson's arrest, more than two kilograms had been distributed by Vinson or by others known to him.[2] Through

---

**2.** According to Comer's statement, more than 2 kilograms of cocaine had been sold, apparently for redistribution, to Vinson and some of his codefendants by the time of Vinson's arrest.

Using a 2 kilogram figure, Vinson's offense level would be 28; adjusting for accepting responsibility and being a minor participant, the total

mid–1987, Comer had been steadily increasing the amounts of cocaine brought on each trip. Given the exponential growth of the network over the period Vinson actively participated, we cannot say that the district court clearly erred in accepting the findings in the probation officer's presentence report and sentencing Vinson on the basis of the total amount of drugs sold throughout the life of the conspiracy.

AFFIRMED

offense level of 24 would still give a sentence range of 51–63 months.