896 F.2d 842
 UNITED STATES of America, Plaintiff-Appellee,
v.
David Clyde SHEFFER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George SHEFFER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clotilda RAINS, a/k/a Co Rains, a/k/a Coco Rains,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph RAINS, Defendant-Appellant.
 Nos. 89-5573-to 89-5575, 89-5578.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1989.
Decided Feb. 20, 1990.
Rehearing and Rehearing In Banc Denied April 17, 1990.
 
 Richard William Wineland, John David Ash, Paul R. Kramer, Phillip Leventhal, for defendants-appellants.
 James R. Alsup, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty.; Billy S. Bradley, Steven L. Purcell, Asst. U.S. Attys., on brief), for plaintiff-appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.
 ERVIN, Chief Judge:
 
 
 1
 Defendants David Sheffer, George Sheffer, and Clotilda Rains appeal their sentences following their pleas of guilty to charges of conspiracy to possess with intent to distribute and distribution of 1000 kilograms or more of marijuana. Ralph Rains appeals his conviction for the same offense after a jury trial, and his sentence. Specifically, all of the defendants contend that the ex post facto clause of the Constitution bars the application of the Sentencing Reform Act Guidelines ("Guidelines") to an ongoing conspiracy begun before November 1, 1987, and terminated after that date. David and Clotilda[1] also appeal their individual sentences under the Guidelines. For the reasons discussed below, we affirm the sentences and Ralph's conviction.
 
 I.
 
 2
 On August 31, 1988, the four appellants, along with David's wife, Donna Sheffer, George's wife, Patti Sheffer, their aunt Patricia Hamilton, and Clotilda's friend, Rebecca Ann White, were indicted by a federal grand jury in Baltimore, Maryland. They were charged with conspiracy to possess with intent to distribute and distribution of 1,000 kilograms or more of marijuana in violation of 21 U.S.C. Sec. 841(a)(1) (1981).
 
 
 3
 On December 12, 1988, David, George, Patti Sheffer and Clotilda tendered pleas of guilty to the conspiracy charge. The indictment was dismissed as to Patricia Hamilton. The next day, the trial of Ralph commenced with the other members of the family testifying for the Government. The jury returned a verdict of guilty, convicting Ralph.
 
 
 4
 In March 1989, the district court rejected the defendants' attacks on the Sentencing Guidelines and sentenced the defendants as follows: David, 96 months; George, 63 months; Clotilda, 78 months; Ralph, 78 months; Rebecca Ann White, 30 months; Donna Sheffer, 3 months; Patti Jane Sheffer, 1 month. Thereafter, David, George, Clotilda, and Ralph filed this appeal.
 
 II.
 
 5
 Appellate review of a sentence imposed under the Guidelines is limited to a determination of whether it is either "in violation of law ... or as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. Sec. 3742(e). During sentencing, the district court's findings of fact should be based upon a preponderance of the evidence. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); United States v. Vinson, 886 F.2d 740, 741 (4th Cir.1989). The court of appeals should "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and [must] accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. Sec. 3742(d).
 
 III.
 
 6
 The defendants argue that the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 and effective November 1, 1987, should not apply to this case in which the conspiracy commenced prior to November 1, 1987, and continued after that date.[2] They maintain that application of the Guidelines to a conspiracy beginning before the Act's effective date violates the ex post facto clause of the United States Constitution. Cf. Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (A law violates the ex post facto clause if it changes the legal consequences of the defendant's acts completed before its effective date and it disadvantages the offender affected by it.).
 
 
 7
 Conspiracy is an ongoing crime, and "once a criminal conspiracy is established, it is presumed to continue until its termination is affirmatively shown." United States v. Portsmouth Paving Corp., 694 F.2d 312, 318 (4th Cir.1982). According to Professors Lafave and Scott:
 
 
 8
 The problem of determining the date of the offense for ex post facto purposes may also be present when the offense is of a continuing nature, as with an ongoing conspiracy.... If the conduct ... continues after the enactment or amendment of the statute in question, this statute may be applied without violating the ex post facto prohibition. Thus, a statute increasing the penalty with respect to a conspiracy may be applied to a conspiracy which commenced prior to but was carried on and continued beyond the effective date of the new act.
 
 
 9
 W. Lafave & A. Scott, Criminal Law 94 (1972).
 
 
 10
 In United States v. Vinson, 886 F.2d 740 (4th Cir.1989), the defendant was sentenced under the Guidelines for conspiracy to possess cocaine with intent to distribute and conspiracy to distribute thirty kilograms of cocaine from about April 1, 1987, through about January 18, 1988. In that case, the conspiracy began before the Guidelines became effective but continued until after November 1, 1987. Even though not directly addressing the ex post facto issue, the court did affirm the sentence for conspiracy under these facts.
 
 
 11
 The Eighth Circuit has explicitly held that "since conspiracy is an ongoing act, an increased penalty 'may be applied to a conspiracy which commenced prior to but was carried on and continued beyond the effective date of the Act.' " United States v. Lee, 886 F.2d 998, 1003 (8th Cir.1989) (quoting United States v. Corn, 836 F.2d 889, 898 (5th Cir.1988) (Davis, J., concurring in part, dissenting in part; quoting W. Lafave & A. Scott, Criminal Law 94 (1972)); see also United States v. Walker, 885 F.2d 1353 (8th Cir.1989) (per curium).
 
 Likewise, the Fifth Circuit has held:
 
 12
 Conspiracy is a continuing offense. Assuming that the [sentencing] guidelines prescribe a sentence for the [defendant's] drug conspiracy greater than the previous norm, the Ex Post Facto clause, which bars an increase in the punishment for an offense after it has been committed, is not violated by applying an increased penalty to [the] conspiracy that continued after the effective date of the increased penalty.
 
 
 13
 United States v. White, 869 F.2d 822, 826 (5th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).
 
 
 14
 We agree with our sister circuits that the application of the Guidelines to an ongoing conspiracy does not in any way violate the ex post facto clause. The defendants either pled, or were found to be, guilty of a conspiracy that existed on November 2, 1987, and every day thereafter until the conspiracy was affirmatively terminated. This offense therefore occurred after November 1, 1987, and clearly falls within the savings provision of the Sentencing Reform Act. See supra note 2.
 
 
 15
 The defendants also assert that the ex post facto clause bars sentencing consideration of the quantity of drugs that was distributed prior to November 1, 1987, during the course of the conspiracy. To support their position, they cite cases in which courts have held that convicted defendants could not be ordered to pay restitution under the Victim and Witness Protection Act of 1982, 18 U.S.C. Secs. 3579-3580 (1985), for crimes committed before the effective date of the statute. See, e.g., United States v. Oldaker, 823 F.2d 778 (4th Cir.1987). But see, e.g., United States v. Bortnovsky, 879 F.2d 30, 42 (2d Cir.1989) (restitution may be ordered for any act committed as part of a conspiracy if at least one offense occurred after the Act's effective date). Unlike victim restitution payments, however, a drug conspiracy is one unity offense whereas the losses for which victims are to receive restitution must be, by necessity, separately identified. Penalties for controlled substance offenses are based on the aggregate total weight of the mixture or substance containing detectable amounts of the controlled substance. See 21 U.S.C. Sec. 841 (1984). To exclude part of the aggregate total weight would be inconsistent with the overall approach of the Sentencing Guidelines. The weight of authority and better reasoning supports the inclusion of these amounts in sentencing determinations, and we therefore uphold the district court's application of the Guidelines in this case.
 
 IV.
 
 16
 In this appeal, Clotilda also contends that the district court should have made an adjustment and departed downward based on her status as a first-time offender.[3] Under the Sentencing Reform Act, a district court may depart from the Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. Sec. 3553(b) (1985). The court, however, is under no obligation to consider a departure when the circumstances have adequately been considered by the Sentencing Commission. See United States v. Uca, 867 F.2d 783, 786 (3d Cir.1989).
 
 
 17
 In considering the criminal history of the defendant, the Sentencing Guidelines do take into account a defendant's status as a first-time offender. Clotilda asserts that her offense was a single act of aberrant behavior that, as a mitigating factor, justifies a downward departure.[4] A defendant who advances a mitigating factor, however, bears the burden of proof to establish that factor by a preponderance of the evidence. United States v. Urreqo-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Because the evidence showed that Clotilda had been involved in a conspiracy that consisted of multiple drug transactions over several years, the district court refused to depart from the guideline-specified sentence. This determination was neither "in violation of law" nor "a result of an incorrect application of the Sentencing Guidelines," and we therefore affirm the court's decision.
 
 V.
 
 18
 The district court increased David's offense level by four levels under Sentencing Guidelines Sec. 3B1.1, which provides:
 
 
 19
 Aggravating Role--based on the defendant's role in the offense, increase the offense level as follows:
 
 
 20
 (a) if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 21
 In the commentary to Sec. 3B1.1, Application Note 3 states, in pertinent part:
 
 
 22
 In distinguishing a leadership and organizational role from one of mere management or supervision titles such as "kingpin" or "boss" are not controlling. Factors the Court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control exercised over others. There can, of course, be more than one person who qualifies as a leader of the criminal association or conspiracy.
 
 
 23
 The trial court's determination that the defendant played an aggravating role in the offense is essentially factual, see, e.g., United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989), and therefore is subject to the "clearly erroneous" standard of review. See 18 U.S.C. Sec. 3742(d).
 
 
 24
 In this case, the district court found that David was an organizer and leader of his family business, that it involved five or more participants, and that the business was extensive. He was the first family member heavily involved in distributing marijuana. There was evidence that he was turning his business over to George and Clotilda when he decided to get out of the marijuana business, and he was instrumental in helping other family members enter the business. By being the family's primary supplier, he could regulate the availability of the marijuana and thereby exert some control over their individual operations. This evidence is more than sufficient to support the district court's decision that David was an "organizer or leader" for purposes of Sec. 3B1.1.
 
 VI.
 
 25
 In sentencing David, the district court determined that a base offense level of 30 was appropriate. The offense level was increased by four levels because of David's role as a leader or organizer in the offense. The offense level was reduced by two levels based upon his acceptance of responsibility under Sec. 3E1.1 of the Guidelines. Finally, the government recommended a two level reduction as a departure for substantial assistance to law enforcement, but the court reduced the level by three levels instead to level 29. The guideline range for a defendant at level 29 with a criminal history category of "I" is 87 to 108 months. The court sentenced David to 96 months.
 
 
 26
 David argues that he should be sentenced at the low end of the guideline range because of the recommendation contained in the plea agreement letter signed with the United States. Paragraph 5(b) of that letter states:
 
 
 27
 At his sentencing, this office will recommend that defendant be given a two level reduction in the applicable offense level for acceptance of responsibility pursuant to Sec. 3E1.1 of the sentencing guidelines and a two level reduction based on defendant's good faith effort to provide substantial assistance in the investigation and prosecution of others pursuant to Sec. 5K1.1 of the sentencing guidelines and the low end of the resultant guideline range.
 
 
 28
 The government claims that its recommendation of the low end of the guideline range was premised upon the court providing a downward adjustment of two levels for acceptance of responsibility and two levels for cooperation, and because the court provided a three level downward adjustment for cooperation, it was not bound to recommend the low-end sentence. David, on the other hand, understood the agreement to bind the government to recommend the low-end sentence regardless of the adjustments made to the base offense level by the Court.
 
 
 29
 An extended discussion ensued between the district court judge, David himself, and David's attorney over the interpretation of this paragraph. Because of the disagreement, the court offered to permit David to withdraw his plea of guilty. The court also made clear that if David persisted in his guilty plea then he would waive his right to appeal the issue of this misunderstanding in any post conviction proceedings. Acknowledging that he understood all this, David maintained his plea of guilty.
 
 
 30
 We recognize that the plea agreement was ambiguous and poorly drafted. The government should be extremely careful in writing these agreements, using perfectly clear language that precludes the possibility of future claims of prosecutorial misconduct; however, in this case, because David could have withdrawn his plea and did not, we hold that this issue was waived for purposes of appeal. The district court explained to him that, under the circumstances, he was not bound by the plea agreement. By maintaining his plea, David accepted the court's decision and cannot now point to a reversible error that would require us to overturn his sentence. Moreover, even if this issue had not been waived, the district court adequately resolved the misunderstanding over the language of the plea agreement and did not err in sentencing David to 96 months. This sentence is in the lower half of the applicable guideline range at level 29. If the court had followed the government's recommendation as stated in the plea agreement letter and as interpreted by David, it would have sentenced him at level 30. Therefore, we find that the district's court sentencing of him was appropriate and within the parameters of the Guidelines.
 
 VII.
 
 31
 The last issue in this appeal is whether the district court erred in permitting the other family co-conspirators to testify against Ralph. Ralph contends that their testimony was not credible and therefore should not have been considered at his trial. It is well-settled law that testimony of an accomplice or co-conspirators can be sufficient to support a conviction. See, e.g., United States v. Butler, 792 F.2d 1528, 1536 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). Because it is the fact-finder's, and not the judge's, responsibility to assess the credibility of witnesses in weighing the evidence, we do not find that the court erred in allowing the jury to consider this testimony.
 
 VIII.
 
 32
 Having considered and rejected each of the appellants' assertions of error, we determine that the district court's findings and conclusions on all of the issues discussed above are supported by the record and the law. Accordingly, the sentences of David, George, and Clotilda, and the conviction and sentence of Ralph are
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 The appellants belong to the same family, and their last names are either "Sheffer" or "Rains." To avoid confusion in this opinion, each appellant will hereinafter be referred to by his or her first name
 
 
 [2]
 The effective date and savings provision of the Act states in part:
 This chapter ... shall take effect on the first day of the first calendar month beginning 36 months after the date of enactment [October 12, 1984] and shall apply only to offenses committed after the taking effect of this chapter....
 The Sentencing Reform Act of 1987, Pub.L. 100-182, Sec. 2(a).
 
 
 [3]
 Other circuit courts of appeals have recently held that a district court's decision not to depart from the applicable guideline range, either up or down, is not appealable. See, e.g., United States v. Tucker, 892 F.2d 8 (1st Cir.1989); United States v. Colon, 884 F.2d 1550, 1552-56 (2d Cir.1989); United States v. Denardi, 892 F.2d 269 (3d Cir.1989); United States v. Franz, 886 F.2d 973, 976-81 (7th Cir.1989); United States v. Fossett, 881 F.2d 976, 979 (11th Cir.1989). Because this issue was not raised in this appeal, we refrain from addressing it in our opinion. Our deciding to affirm the district court on the merits of Clotilda's claim, however, does not indicate in any way that a district court's failure to depart can or cannot be a basis of appeal. We leave that question for another day
 
 
 [4]
 "The [United States Sentencing] Commission ... has not dealt with the single acts of aberrant behavior that still may justify [a lower sentence] through departures." U.S. Sentencing Guidelines Manual Ch. 1, Pt. A, 4(d) at 1.8. The fact that an offense was a "single act of aberrant behavior" therefore could be a mitigating circumstance