923 F.2d 855
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roy Neill ACUFF, Jr., Defendant-Appellant.
 No. 90-5720.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a sentence imposed following a plea of guilty to a charge of conspiracy to distribute cocaine. The sole issue is whether the district court erred in its calculation of the defendant's offense level under the Sentencing Guidelines. Rejecting a recommendation by the probation officer who prepared the defendant's presentence investigation report, the court determined that a quantity of cocaine found in the residence of one Robert Cleveland, who was the supplier of the defendant's supplier, was attributable to the defendant even though he and Mr. Cleveland were not personally acquainted and did not deal directly with one another. We conclude that the district court's findings were not clearly erroneous, and we shall affirm the sentence.
 
 
 2
 * Between August and October of 1989, undercover government agents made nine purchases of cocaine from the defendant, Roy Neill Acuff, Jr. Mr. Acuff was a drug addict who supported his habit by selling drugs at retail on the streets. The quantities of cocaine purchased from Mr. Acuff by the undercover agents ranged from one-eighth of an ounce to three ounces.
 
 
 3
 Mr. Acuff would typically collect the purchase money from his customer first. He would then pick up the cocaine at the home of his supplier, a man named John Vaughn, and deliver it to the customer. On three occasions Mr. Acuff had to wait while Mr. Vaughn replenished his stock from his own supplier. Acuff did not know who Vaughn's supplier was, but the agents were able to identify him as Robert Cleveland.
 
 
 4
 When the agents closed their net, five grams of cocaine were found at Mr. Vaughn's residence, along with drug paraphernalia. At Mr. Cleveland's residence the agents found nine one-ounce bags of cocaine, nineteen quarter-ounce bags, and two handguns.
 
 
 5
 Pursuant to a plea bargain, Mr. Acuff pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. The probation officer who prepared a presentence report for the district court concluded that the cocaine found in Mr. Vaughn's residence was properly attributable to Acuff. Because Acuff had no direct knowledge of Cleveland's drug trafficking activities, however, the probation officer concluded that the large quantity of cocaine found in the Cleveland residence could not be attributed to Acuff. The government filed a written objection to this conclusion.
 
 
 6
 A sentencing hearing was held before District Judge Thomas Higgins on May 21, 1990. After considering the PSI report, the factual statements in which were accepted as true by Mr. Acuff, and after hearing the arguments of counsel, the court concluded that Mr. Cleveland's cocaine was attributable to Mr. Acuff for sentencing purposes. The court noted that Cleveland, Vaughn, and Acuff were all links in the chain of distribution; that Acuff was able to obtain cocaine quickly from Vaughn; and that Acuff knew Vaughn had a ready source of supply. Because it was reasonably foreseeable that Vaughn's supplier would have an inventory of cocaine on hand, the court concluded, that supplier's inventory, like Vaughn's, was properly attributable to Acuff.
 
 
 7
 Given the quantity of drugs involved, the court determined that Mr. Acuff's total offense level would be 24. This reflected a decision to allow a two-level reduction for acceptance of responsibility. The guideline sentence range for a person with an offense level of 24 and a criminal history category of I, Mr. Acuff's category, is imprisonment for 51-63 months. The court imposed a sentence at the top of this range, ordering imprisonment for 63 months. The prison sentence is to be followed by a four-year period of supervised release.
 
 II
 
 8
 This court will not reverse a district court's finding as to the quantity of drugs attributable to a defendant for sentencing purposes unless the finding is determined to have been clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-1301 (6th Cir.), cert. denied sub nom., Mitchell v. United States, 111 S.Ct. 273, cert. denied sub nom., Johnson v. United States, 111 S.Ct. 530, cert. denied sub nom., Walton v. United States, 111 S.Ct. 532 (1990). The clearly erroneous standard is also applied on review of findings as to the foreseeability of the scope of a conspiracy. United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 110 S.Ct. 878 (1990). We will, of course, consider the recommendations of a probation officer where they conflict with the district court's findings, but such recommendations are entitled to no presumption of validity.
 
 
 9
 U.S.S.G. Sec. 2D1.4 provides that the offense level for a defendant convicted of a conspiracy involving a controlled substance is the same as it would be if the object of the conspiracy had been completed. Application Note 1 for Sec. 2D1.4, as it existed prior to amendments made on November 1, 1989, provided that:
 
 
 10
 "If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable."
 
 
 11
 U.S.S.G. Sec. 1B1.3(a)(1) provides that all conduct in furtherance of the offense of conviction is relevant for sentencing purposes. Application Note 1 for this section, as in effect prior to the amendments of November 1, 1989, provided, in pertinent part, that "[i]f the conviction is for conspiracy, it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant."
 
 
 12
 In the amendments of November 1, 1989, the Sentencing Commission clarified the application notes to Secs. 2D1.4 and 1B1.3. As amended, the commentary to Sec. 2D1.4 refers the reader to Application Note 1 of Sec. 1B1.3. The latter note reads, in pertinent part, as follows:
 
 
 13
 "In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant [is accountable] ... also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline."
 
 
 14
 Mr. Acuff argues that there is no reason to believe that he could have foreseen that an unknown member of the conspiracy would possess cocaine in quantities as large as those found in Mr. Cleveland's residence. He stresses that he neither knew Mr. Cleveland nor made any arrangements with him for the distribution of drugs.
 
 
 15
 We do not find the argument persuasive. Under the guidelines, Mr. Acuff was accountable for all drugs the use of which in furtherance of the conspiracy was reasonably foreseeable by him. See United States v. Drew, 894 F.2d 965 (8th Cir.), cert. denied, 110 S.Ct. 1830 (1990) (entire quantity of drugs found at drug house used to calculate defendant's offense level, not just drugs sold by the defendant), and United States v. Sailes, 872 F.2d 735 (6th Cir.1989) (mother who allowed her son to use her home for drug operation held accountable under U.S.S.G. Sec. 1B1.3 for all drugs in the home, notwithstanding that she had actual knowledge of only a portion of them). As the district court found, Mr. Acuff was able to obtain small quantities of cocaine from Mr. Vaughn on short notice and very frequently. Acuff knew that Vaughn had a supplier from whom he, in turn, could obtain drugs quickly. It was reasonable to assume that Vaughn's supplier kept a larger inventory on hand than Vaughn did, as is evidenced by the fact that Acuff had to wait for Vaughn to replenish his own supply on several occasions. If no arrests had been made, it is fair to infer that the entire quantity of drugs found in Mr. Cleveland's possession would gradually have been transferred to Vaughn and then to Acuff pursuant to the conspiracy.
 
 
 16
 It does not matter that Mr. Acuff was not acquainted with all of his co-conspirators. See United States v. Liefer, 778 F.2d 1236, 1247 n. 9 (7th Cir.1985). It is enough that Acuff knew that there had to be someone like Cleveland in the picture and knew that this person would be likely to have an inventory such as that found at Cleveland's residence.
 
 
 17
 AFFIRMED.