928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Clarence COX, Jr., Defendant-Appellee.
 No. 90-5193.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1991.
Decided March 18, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Richard C. Erwin, Chief District Judge. (CR-88-79-WS)
 Harry L. Hobgood, Assistant United States Attorney, Greensboro, N.C. (argued), for appellant; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.D., on brief.
 David Ferris Tamer, Winston-Salem, N.C., for appellee.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and JOSEPH H. YOUNG, Senior United States Distict Judge for the District of Maryland, sitting by Designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The government appeals the sentence imposed on Clarence Cox, Jr., for conspiracy to possess cocaine with intent to distribute. In calculating Cox's base offense level under the Federal Sentencing Guidelines, the district court excluded from consideration almost one kilogram of cocaine in the possession of Cox's coconspirator, Alfred Barnhill. The exclusion was error, so we vacate the judgment and remand for resentencing.
 
 
 2
 Cox was an investigator with the Winston-Salem Alcoholic Beverage Control Law Enforcement Division when he entered into an arrangement with Barnhill, a cocaine dealer. Barnhill paid Cox to provide him with information about the activities of local law enforcement officers. Cox and Barnhill assisted one another in other ways: Cox sold Barnhill a pistol to use in his drug dealings; Barnhill gave Cox a $4,000 "loan" which Cox did not repay; and Cox provided Barnhill with 94 grams of cocaine recovered during the arrest of another drug dealer, which Barnhill then sold, splitting the proceeds with Cox.
 
 
 3
 On March 7, 1988, state and federal officers searched Barnhill's residence and found a safe containing $39,000 and almost one kilogram of cocaine. As a result of the search, officers learned of the connection between Barnhill and Cox. At Cox's trial, Barnhill testified that on March 6, the day before his residence was searched, Cox requested another "loan" of $5,000. Barnhill testified that he told Cox that he had a large quantity of cocaine to sell and that he would give Cox $5,000 from the proceeds of that sale.
 
 
 4
 A jury subsequently convicted Cox of three counts: (1) conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846; (2) distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1); and (3) selling a firearm to a convicted felon, in violation of 18 U.S.C. Sec. 922(d)(1). At the sentencing hearing following Cox's trial, the district court held that the Sentencing Guidelines did not apply. We reversed, holding that the guidelines apply to the conspiracy charge, count 1. United States v. Cox, No. 88-5184, slip op. (4th Cir. Feb. 9, 1990). The guidelines do not apply to counts 2 and 3.
 
 
 5
 At the second sentencing hearing, the government argued that Cox's base offense level for conspiracy should be calculated by combining the 94 grams of cocaine Cox distributed to Barnhill with the approximately one kilogram of cocaine found in Barnhill's residence, resulting in a base offense level of 26. See U.S.S.G. Sec. 2D1.1(a)(3) and (c)(9). The government also asserted that this base level should be increased by two levels for the use of a firearm, Sec. 2D1.1(b)(1), and by an additional two levels for abuse of a position of trust, Sec. 3B1.3, creating a base offense level of 30 with a criminal history category of I resulting in an imprisonment range of 97 to 121 months.
 
 
 6
 The district court found that "the cocaine in possession of Mr. Barnhill on March 7th was not shown by the evidence to the extent that this Court could find from the preponderance of the evidence that Mr. Cox was connected to or related to that cocaine other than to anticipate a loan or a bribe from the proceeds thereof...." The district court ruled that it would not consider the cocaine found in Barnhill's residence for the purpose of sentencing, thus reducing the base offense level from 30 to 20.
 
 
 7
 Factors that determine the guideline range include "[i]n the case of criminal activity undertaken in concert with others ... the conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. Sec. 1B1.3 commentary 1; see United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989). "If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." U.S.S.G. Sec. 2D1.4.
 
 
 8
 A district court's factual determination, such as a finding of knowledge or foreseeability, is reviewable under the "clearly erroneous" standard. A legal determination, such as an incorrect application of the Sentencing Guidelines, is reviewed under a de novo standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 9
 During Cox's second sentencing hearing, the district court determined that Cox knew of the cocaine at Barnhill's residence and anticipated a loan from the proceeds of its sale. Under sections 1B1.3 and 2D1.4 of the guidelines and the law of this circuit, that finding dictates that the cocaine discovered at Barnhill's residence should have been considered in calculating Cox's base offense level.
 
 
 10
 Cox's sentence must be vacated. The record indicates, as the government contends, that a base offense level of 30 would be appropriate for the conspiracy conviction. We remand for further sentencing proceedings consistent with this opinion.
 
 
 11
 VACATED AND REMANDED.
 
 ERVIN, Chief Judge, dissenting:
 
 12
 In United States v. Cox, No. 88-5184, slip op. (4th Cir. Feb. 9, 1990), this court directed the district court on remand to make findings as follows:
 
 
 13
 On remand, the district court should determine the amount of cocaine involved in the conspiracy and sentence accordingly under the guidelines. The court should make specific findings about whether Cox was involved with the drugs seized from Barnhill's residence on March 7, 1988.
 
 
 14
 The district court made specific findings at a subsequent hearing and found that Cox was not involved with the drugs seized from Barnhill's residence.
 
 
 15
 On May 11, 1990, the district court held a hearing to make the required findings. At the hearing, the district court was most aware of the directive of this court. At one point during the hearing, the court said: "The court [Fourth Circuit] is very specific about me making a finding with reference to this cocaine." Later, the district court specifically quoted the directions from this court, noting that we directed him to "find the facts." The district court repeatedly asked the government to come forward with "any facts to show that Mr. Cox was connected with the drugs on March 7th." In addition, the court asked the government at one point:
 
 
 16
 Any other evidence you'd like to call to the court's attention from the record? Now, the Court of Appeals didn't say I could take additional evidence; it told me to make a finding, and that means from what's in the record. Now, has the government called my attention to everything in the record it feels supports its position?
 
 
 17
 These comments show that the district court was keenly aware of its duty to make specific findings of fact as directed by this court. In fact, the court was so concerned with its duty that it granted a recess because it found that "it [did] not have sufficient information or sufficient time to go over the transcript with reference to a few matters that the Court had concern about." The Court then took a recess until May 15.
 
 
 18
 At the May 15 hearing, the district court made its findings of fact as follows:
 
 
 19
 Now then, the Court has reviewed the evidence of Mr. Barnhill at least three times, and the last time this morning, and the Court studied it from the angle--well, strike "angle"--studied it from the perspective which would be more reasonable to the government, and from Mr. Barnhill's testimony, the Court determined that the cocaine in possession of Mr. Barnhill on March 7th was not shown by the evidence to the extent that this Court could find from the preponderance of the evidence that Mr. Cox was connected to or related to that cocaine other than to anticipate a loan or a bribe from the proceeds thereof, and with reference to the proceeds from the sale of the cocaine found at Mr. Barnhill's residence, the Court notes that the record clearly shows that he had on hand about forty thousand dollars from which he could have made available to Mr. Cox, had he wanted to, and such was not made available to him. This gives rise to an inference that had witness Barnhill sold the cocaine in his possession which was found on March 7, 1988, witness Barnhill would not have advanced, bribed, or given--would not have advanced or given Mr. Cox any further payment.
 
 
 20
 The district court thus held that Cox was not involved with the drugs seized at Barnhill's residence on March 7, 1988.
 
 
 21
 I agree with the majority that we review the district court's factual determinations, such as a finding of knowledge or foreseeability, under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). However, I disagree with the majority's holding that the district court's findings in this case were clearly erroneous. The district court was well aware of its duty to make specific findings as directed by this court. Having told the court to make those findings, I would defer to the findings the court made. I do not believe that the findings were clearly erroneous, and I would affirm the district court's decision.
 
 
 22
 The connection between Cox and the cocaine found at Barnhill's residence on March 7th was weak. The government asserted that Cox anticipated a loan from the proceeds of the sale of the cocaine found in the safe. However, the evidence showed that Barnhill had some forty thousand dollars on hand at the time Cox asked for the loan, but did not loan Cox that money because it was earmarked from a certain drug deal. The district court could reasonably have concluded that Barnhill would have refused to loan Cox money out of the proceeds of the cocaine in the safe under the same theory.
 
 
 23
 In sum, I would affirm the findings of the district court. The district court understood its duty to make specific findings of fact as directed by this court. Once the district court made those findings, we have a duty to uphold them unless they are clearly erroneous. I do not think that the findings in this case were clearly erroneous. Therefore, I respectfully dissent.