989 F.2d 496
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Donald Scott GRAHAM, Defendant-Appellant.
 No. 92-5478.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 17, 1993
Decided: March 12, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Salisbury. Norwood Carlton Tilley, Jr., District Judge. (CR-91-256-S)
 William C. Ingram, Jr., FLOYD, ALLEN & JACOBS, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Greensboro, North Carolina; Karen I. Robbins, Third-Year Law Student, Wake Forest School of Law, Winston-Salem, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Following a jury trial, Donald Scott Graham was convicted on one count of conspiracy with intent to distribute and conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 846 (1988). Graham appeals, contending that the district court erred by attributing 8000 pounds of marijuana to him for sentencing purposes. We find this claim to be meritless; consequently, we affirm.
 
 
 2
 Convicted drug felon Thomas Alvin Moore testified against Graham at his jury trial. Moore testified that he first sold marijuana to Graham in early 1988. From the summer of 1988 until early 1990, Moore estimated that he picked up or arranged for seventy-four marijuana deliveries. During this period, Graham was Moore's biggest customer. Moore stated that from 1988 to 1990, Graham continued to double the quantity of marijuana he ordered until he was ordering 400 pounds per shipment, ultimately receiving a total of approximately 13,000 pounds of marijuana. Moore's son and daughter also testified that Graham bought large quantities of marijuana from their father.
 
 
 3
 The jury found Graham guilty. The presentence report recommended that "Graham should be responsible for at least 13,000 pounds of marijuana (5896.8 kilograms)." For sentencing purposes, the district court attributed 8000 pounds (3636 kilograms) of marijuana to Graham and sentenced him to 151 months in prison and a five year term of supervised release. This Court must accept the district court's factual findings unless they are clearly erroneous. United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990).
 
 
 4
 As the government correctly notes, Vinson is factually similar to this case. Vinson was involved in a drug distribution ring in which he received shipments of cocaine from an individual named Comer.
 
 
 5
 Comer began to make regular deliveries to Vinson starting in early 1987. Initially, Vinson received a one ounce delivery, but soon began to receive multiple-ounce deliveries which he then resold. By the time of Vinson's May 1987 arrest, Comer was negotiating a one kilogram cocaine purchase and transferred more than two kilograms of cocaine to Vinson and the other coconspirators. Id. at 742. Vinson appealed his drug conspiracy conviction, claiming that the district court erred by sentencing him on the basis of the total amount of cocaine in the indictment. Id. This Court upheld his conviction, stating that "[g]iven the exponential growth of the network over the period Vinson actively participated, we cannot say that the district court clearly erred in accepting the findings in the probation officer's presentence report and sentencing Vinson on the basis of the total amount of drugs sold throughout the life of the conspiracy." Id. at 743.
 
 
 6
 Here, from 1988 to 1990, Graham kept increasing the quantity of his marijuana orders until he was ordering 400 pounds per shipment. Moore delivered or arranged delivery of approximately seventy-four marijuana shipments from 1988 to 1990; Graham was his biggest customer. Of the estimated 20,000 pounds of marijuana involved in the conspiracy, Moore testified that Graham received about 13,000 pounds, the amount of marijuana for which the probation officer recommended Graham be held responsible. Given Moore's testimony concerning the amount of marijuana delivered to Graham and the probation officer's recommendation that 13,000 pounds of marijuana be attributed to Graham, the district court's finding that Graham was responsible for 8000 pounds of marijuana was not clearly erroneous.
 
 
 7
 Graham attempts to discount Moore's testimony by highlighting alleged inconsistencies in his testimony. However, the credibility of witnesses is within the sole province of the fact finder and is unreviewable on appeal. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). He also claims that his allegedly modest lifestyle contradicts any conclusion that he handled a large quantity of marijuana. We find that the district judge properly rejected this reasoning, stating that the argument speculatively assumes that Graham would have been able to sell the marijuana "for a good profit."
 
 
 8
 For these reasons, we affirm Graham's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED