1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronnie Lanier RICHMOND, Defendant-Appellant.
 No. 90-5169.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 10, 1993.
Decided: August 9, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Norwood Carlton Tilley, Jr., District Judge. (CR-89-47-D)
 Susan Hayes, Greensboro, North Carolina, for Appellant.
 David Bernard Smith, Assistant United States Attorney/Senior Litigation Counsel, Greensboro, North Carolina, for Appellee.
 Barry S. Stanback, Stanback & Stanback Attorneys, P.A., Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER and NIEMEYER, Circuit Judges, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant, Richmond, was tried and convicted of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1) (1988). The error assigned is the district court's denial of Richmond's motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and the district court's sentencing determination that Richmond was responsible for more than five kilograms of cocaine. We affirm the district court's ruling and sentencing.
 
 FACTS
 
 2
 On February 23, 1989, Regina Thomas and Stanley Nicholson, two indicted co-defendants of Richmond, were arrested following receipt of a parcel delivery of four kilograms of cocaine at the Thomas residence. After a complete search of the home and interviews of Thomas' roommates, Thomas agreed to cooperate with the police. As a result of Thomas' cooperation and the government's independent investigation, Richmond and several co-defendants were charged by a grand jury in an eleven count superseding indictment on April 24, 1989.
 
 
 3
 Trial evidence revealed that five deliveries of cocaine were made using postal services between October 1988 and February 1989. These deliveries totaled 13 kilograms of cocaine. Richmond contends that there was insufficient trial evidence to establish his involvement in this conspiracy, consequently he was entitled to a judgment of acquittal as a matter of law. Richmond also asserts that the trial court erroneously determined that he was responsible for more than five kilograms of cocaine during the sentencing phase. Richmond's latter argument is based on two premises. First, that Richmond could not reasonably foresee the involvement of more than five kilograms of cocaine in the conspiracy, and second, that the trial court sentenced Richmond based on an incorrect assumption that no sentence was available below the mandatory minimum set out in the statute under which the defendant was charged.
 
 JUDGMENT OF ACQUITTAL
 
 4
 Rule 29 of the Federal Rules of Criminal Procedure provides:
 
 
 5
 [t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.
 
 
 6
 This court has held that the standard of review applicable to Rule 29 motions is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982). In determining the issue of substantial evidence, the court neither weighs the evidence nor considers the credibility of witnesses. United States v. Arrington, 719 F.2d 701 (4th Cir. 1983).
 
 
 7
 The district court did not err in denying Richmond's motion for judgment of acquittal. Taken as a whole, the evidence in this case is clearly sufficient for a reasonable jury to infer that Richmond is guilty of conspiracy to possess cocaine with intent to distribute. Specifically, the prosecution offered sufficient evidence to establish (1) that there was an agreement between two or more persons to undertake conduct that would violate the laws of the United States related to controlled substances and (2) that Richmond willfully joined in that agreement. See United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991), cert. denied, U.S., 112 S. Ct. 1701 (1992) (articulating the essential elements of a section 846 conspiracy).
 
 
 8
 The trial evidence established the following: Thomas met Richmond through a mutual friend around May, 1987, and several months later, Richmond gave her three or four small bags of cocaine to deliver to Hickory, North Carolina; which she did. In June of 1988, Richmond introduced Thomas to co-defendant, Nicholson. On June 12, 1988, during a birthday celebration at her residence, Thomas overheard Richmond tell Nicholson, that Richmond knew a lot of people who wanted to get "product" [cocaine]. During the summer of 1988, Thomas also overheard Richmond tell Nicholson that people were complaining about "it" being "shake" (slang for a powder form of cocaine) instead of "rock" (slang for a solid form of cocaine). Nicholson responded by stating that it was the end of the bag. On July 4, 1988, Nicholson asked Thomas if she had overheard Nicholson and Richmond's prior conversation concerning shake and rock and Thomas acknowledged that she had. Nicholson stated subsequently that "there was a lot of money to be made in Durham and that people loved cocaine." Thomas also observed Nicholson on two other occasions possess considerable amounts of cash ($20,000 and $27,000). Furthermore, Nicholson told Thomas that Richmond had purchased nine ounces of poor quality cocaine from him.
 
 
 9
 In October, 1988, Thomas obtained a hotel room and leased an apartment in her name, at Nicholson's request. On October 22, 1988, while Thomas was in the hotel room with Nicholson, Nicholson engaged in a phone conversation. After the call, Nicholson informed Thomas that the caller was Richmond and that Richmond wanted to know if Nicholson had the drugs yet. Nicholson responded by telling Richmond that they had not arrived. Nicholson also told Thomas that he was expecting two kilos of cocaine to be delivered to Thomas' home. Two days after Richmond's inquiry, Nicholson informed Thomas that the two kilograms of cocaine arrived. An express mail delivery voucher signed by Nicholson as "Stanley Thomas" was introduced as evidence to corroborate that a package was delivered to the Thomas house on that day.
 
 
 10
 On December 2, 1988 another package was delivered by express mail to Thomas' home. Nicholson informed Thomas that the package had contained two kilograms of cocaine. Nicholson later requested Thomas to pick up a bag containing approximately an ounce of cocaine and deliver it to his cousin because Nicholson could not "get rid of all of them."
 
 
 11
 Another express mail delivery of four kilograms of cocaine was also delivered to Thomas' house on February 23, 1989. It was this delivery that resulted in the arrest of Thomas and Nicholson.
 
 
 12
 On these facts, the trial court properly denied Richmond's motion for judgment of acquittal. Given that a conspiracy may be proven by circumstantial evidence, United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991), and proof of a slight connection between the defendant and the conspiracy is sufficient to support conviction, United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied U.S., 112 S. Ct. 3051 (1992), clearly, a reasonable jury could, and did, find that the trial evidence amply supported Richmond's guilt as a section 846 co-conspirator.
 
 RESPONSIBILITY FOR MORE THAN FIVE KILOGRAMS
 
 13
 Richmond also argues that the district court erred in its determination of Richmond's base offense level for sentencing purposes. The Federal Sentencing Guidelines promulgated by the United States Sentencing Commission provide that a base offense level corresponding to the quantity of the drugs involved in an offense is to be assigned to the defendant by the district court. Sentencing Guidelines Secs. 2D1.1(a)(3), 2D1.4(a), application n. 2 toSec. 2D1.4.[1] The court thereafter selects a sentence that falls within the applicable guideline range for that assigned level. This sentence is then adjusted in accordance with the defendant's criminal history, acceptance of responsibility, and other relevant information disclosed in the Pre-sentence Investigation Report. Given this process, the district court's determination of the quantity of drugs involved in an offense significantly influences the convicted defendant's sentence.
 
 
 14
 In United States v. Vinson, 886 F.2d 740 (4th Cir. 1989), cert. denied 493 U.S. 1062 (1990), this court specifically held in accordance with the guideline application notes[2] and conspiracy law[3] that a convicted conspirator is to be sentenced only on the basis of his and/or his co-conspirator's conduct if such conduct was committed in furtherance of the conspiracy and was known, or was reasonably foreseeable, to the defendant. Such conduct includes a determination of the type and amount of drugs involved in the conspiracy and attributable to the defendant. Id. This determination is a question of fact for the sentencing judge, id., and due process is satisfied through application of a preponderance standard, United States v. Urrego-Linares, 879 F.2d 1234 (4th Cir. 1989). Moreover, the sentencing judge's determination will only be overturned on appeal if it is clearly erroneous. Vinson at 742.
 
 
 15
 During the sentencing proceedings, Richmond formally objected to the amount of cocaine (thirteen kilograms) for which he was held accountable in the probation office's Pre-Sentence Report. The trial court questioned the government extensively on the issue of reasonable foreseeability and permitted the government to present additional evidence on the matter at a subsequent sentencing hearing. At that hearing, the prosecution presented testimony that Richmond in late October and again in early December had attempted to get "ounces" of cocaine from Nicholson. At the close of argument the court found that Richmond was a minor participant and that "it was reasonably foreseeable that the amount of cocaine which the conspiracy would involve would amount to more than five kilograms." The court based its findings on the evidence proffered at the trial and sentencing hearing, as well as the lack of evidence of withdrawal from, or termination of, the conspiracy. There is nothing to indicate that the sentencing judge's findings are clearly erroneous.
 
 
 16
 Richmond further contends that a statement made by the court during sentencing indicates that Richmond's sentence was based on the court's "incorrect assumption that no sentence was available below the mandatory minimum set out in the statute under which Richmond was charged." Richmond's contention is without merit.
 
 
 17
 The court at sentencing stated: "I will state for the record it is not going to make any difference with regard to the sentence imposed whether or not I find that it was not foreseeable or whether or not I find that he was a minor participant. The sentence is going to be the same." In so saying, the district judge was merely explaining that Richmond's net offense level would not change regardless of the court's quantity determination because other findings that affect the offense level are also reliant upon the quantity determination. The court further explained, that if it found Richmond responsible for less than five kilograms the court would also conclude that Richmond was not a minor participant and thus not entitled to a two level reduction. In contrast, if the court found, as it did, that Richmond was responsible for greater than five kilograms and as a result received a two level increase, the court would further conclude, as it did, that Richmond was a minor participant with respect to that amount and thus entitled to a corresponding two level reduction. Accordingly, Richmond's offense level is the same under either scenario.
 
 
 18
 For the reasons stated above, we affirm both the district court's denial of Richmond's motion for judgment of acquittal and the sentence it imposed.
 
 AFFIRMED
 
 
 [1]
 Richmond was sentenced under section 2D1.4 of the 1989 guidelines. Section 2D1.4 entitled "Attempts and Conspiracies" was deleted under the November, 1992 guidelines and incorporated into section 2D1.1. which is now entitled "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempts or Conspiracies"
 
 
 [2]
 Application note 1 to section 1B1.3 provides "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant."
 
 
 [3]
 See Pinkerton v. United States, 328 U.S. 640 (1946), holding that a defendant is responsible for the acts of his co-conspirators if those acts were in furtherance of the conspiracy and were reasonably foreseeable to the defendant