944 F.2d 902
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph ERNEST, a/k/a Sincere Ernest, Defendant-Appellant.
 No. 90-5253.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1991.
Decided Sept. 13, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis III, District Judge. (CR-90-242-A)
 Argued: Alan Hideto Yamamoto, Fairfax, Va., for appellant; W. Neil Hammerstrom, Jr., Assistant United States Attorney, Alexandria, Va., for appellee.
 On Brief: Henry E. Hudson, United States Attorney, Jay Apperson, Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, K.K. HALL, Circuit Judge, and MARVIN J. GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Ralph Ernest was indicted by a federal grand jury and later convicted on three counts. Count I charged Ernest with conspiracy to possess with intent to distribute 50 or more grams of "crack" cocaine in violation of 21 U.S.C. § 846. Count II charged him with possession with intent to distribute 50 or more grams of "crack" cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii). Count III charged him with violating the Interstate Travel Act, 18 U.S.C. § 1952. Ernest challenged both his convictions and his sentence. For the reasons hereafter set forth, we affirm Ernest's convictions and sentence.
 
 
 2
 * A trial was held on October 9, 1990. The jury found Ernest guilty on all three counts. On November 30, 1990, a sentencing hearing was held. The court increased Ernest's base offense level two levels for his role in the offense under Guidelines § 3B1.1(c) and two more levels for his obstruction of justice under Guidelines § 3C1.1. Ernest was then sentenced to a period of 262 months, followed by five years of supervised release. A special assessment of $50.00 was imposed.
 
 II
 
 3
 The bulk of the government's evidence against Ernest came in the form of testimony by Angela Lewis who was traveling with Ernest at the time of their arrests. Lewis and Ernest met several months before the date of arrest and saw each other socially, usually at one of their apartments in Washington, D.C. Lewis observed two guns, glassine baggies, razor blades, scales, a mirror and a butane torch at Ernest's apartment during her visits there. Ernest told Lewis that he had people selling drugs for him and that it was easy to make money selling drugs in Washington, D.C. because so many people there would waste their money on drugs. While she was at Ernest's apartment, Lewis heard various people come by and whistle at the window. Ernest would go outside and talk for a couple of minutes and then would leave to take care of business. Ernest and Lewis had a discussion about the value of crack cocaine.
 
 
 4
 Near the time of their arrests, Ernest invited Lewis to go with him to New York to shop before going to Virginia Beach for Memorial Day weekend. They left from Washington National Airport where each purchased one-way plane tickets with Ernest's cash. When they arrived in New York, Ernest told the cab driver to go to an area with which Lewis was unfamiliar. There, Ernest made a phone call from a pay telephone, and then met a Spanish-speaking man. Lewis saw Ernest give the man a bundle of cash in exchange for a brown paper bag. Ernest then hailed another cab and told the driver to go to the airport, advising Lewis that they did not have time to go shopping and that they were heading home. He told Lewis to take off the jacket she was wearing. She did, and he then placed the brown bag in her jacket, instructing her to wear it. Lewis told Ernest that if there were drugs in the bag, she was not going to wear the jacket. Ernest told her if she wanted to go back home, she better wear the jacket, and she did.
 
 
 5
 At the New York Airport, the two again purchased one-way tickets, this time back to Washington, with Ernest's cash. Ernest told Lewis they could not sit together and that she should not talk to him during the trip.
 
 
 6
 At Washington National Airport, law enforcement officers were monitoring the arrival of planes from known drug source cities including New York. They watched the passengers deplane from the flight carrying Ernest and Lewis. Detective Floyd Johnson observed Ernest walk into the arrival area and wander around aimlessly in a behavior consistent with drug couriers. Ernest headed toward the escalators and watched the other deplaning passengers. When he spotted Lewis walk off the plane, Ernest turned quickly and walked up the escalator. Because of this suspicious behavior, law enforcement officers talked with Lewis and Ernest separately.
 
 
 7
 Lewis consented to a search of her purse, suitcase, and jacket. Detectives found the bag which contained 334.47 grams of "crack" cocaine which was 61% pure. Lewis later gave a written statement to the detectives concerning her trip to New York with Ernest. Ernest originally claimed that he did not know Lewis; however, he later admitted that he did.
 
 
 8
 While being transported to the Fairfax County Jail in Virginia, Ernest told Lewis not to say anything to the police and told her that she wouldn't get much time because the authorities wanted him, not her. On the way to the preliminary hearing, Ernest again told Lewis not to say anything.
 
 
 9
 Approximately seven months later, the police executed a search warrant at Ernest's apartment in Hampton, Virginia. There they recovered 60 small baggies with crack cocaine, powder cocaine, empty plastic bags, a beeper, eleven rounds of .38 caliber ammunition, seven rounds of .357 caliber ammunition, two sets of scales and other drug paraphernalia. While the police were conducting the search, a cocaine customer arrived. Ernest was convicted in Hampton Circuit Court of possession with intent to distribute cocaine relating to this incident. At trial in this case, the court admitted evidence of this subsequent arrest solely with regard to Count III, the Interstate Travel count, to show defendant's continuous course of conduct and ongoing business enterprise in drug dealing.
 
 
 10
 On appeal, Ernest raises several issues. First, he challenges the sufficiency of the evidence regarding each of the three counts of conviction. Second, he asserts that the district court erred in allowing evidence to be admitted of his subsequent conviction in state court for possession with intent to distribute cocaine. Third, he asserts that his base offense level should not have been increased two levels for his role in the offense. Fourth, he asserts that the district court erred in increasing his base offense level for obstruction of justice. We will address each in turn.
 
 III
 
 11
 Ernest first challenges the sufficiency of the evidence on each of the three counts of conviction. In reviewing a jury verdict of guilty, an appellate court must examine the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942). We must uphold the guilty verdict unless, when viewing the evidence in the light most favorable to the government, we are convinced that no rational trier of facts could have found the defendant guilty beyond a reasonable doubt. United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir.1986).
 
 
 12
 * Ernest first attacks his conviction on the conspiracy count. He argues that he cannot be convicted of being involved in a conspiracy because there was no agreement between him and Lewis to distribute cocaine. Since he forced her to carry the brown package or else she could not return home, Ernest argues that Lewis did not agree to be a participant. This view of the evidence is not in the light most favorable to the government and contradicts what really occurred. When Ernest told Lewis to wear the jacket containing the brown package, Lewis told Ernest that if there were drugs in the package, she did not want to carry the package. However, she ultimately carried the package anyway.
 
 
 13
 Essentially, Ernest argues that because he forced Lewis to carry the drugs, she was not a willing participant and there was no agreement between them. As a result, there was no conspiracy, even though he gave the drugs to her and she carried them for him. We find that there was sufficient circumstantial evidence of an agreement between them, if not direct evidence of an agreement, when she wore the jacket after asking if it contained drugs. "[C]ircumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989). Because of the overwhelming circumstantial evidence in this case, we find that there was sufficient evidence to support the guilty verdict on Count I.
 
 B
 
 14
 Ernest next contests the sufficiency of the evidence on the possession count. He argues that because no drugs were found on him at the airport, he was not guilty of possession. He attacks Lewis' credibility and asserts that the circumstantial evidence was insufficient to convict him of possession. We disagree. It is the jury's responsibility to resolve inconsistencies in the evidence and to make factual determinations. MacDougall, 790 F.2d at 1151. In addition, possession of a controlled substance with intent to distribute may be either actual possession or constructive possession. United States v. Zandi, 769 F.2d 229, 234 (4th Cir.1985). Constructive possession exists "when the defendant exercises, or has the power to exercise, dominion and control over the item." Id. at 234. Here, the evidence showed that Ernest acquired the drugs, put them in the jacket, forced Lewis to wear the jacket, and watched her deplane. From that evidence, the jury could infer that he had the power to exercise dominion and control over the drugs. Therefore, we find that there was sufficient evidence to support the conviction on Count II.
 
 C
 
 15
 Next, Ernest challenges his conviction on the Travel Count. "To support a conviction under the [Interstate] Travel Act, 18 U.S.C. § 1952, the government must prove three elements: (a) interstate travel; (b) intent to promote unlawful activity, i.e., a business enterprise; and (c) performance or attempted performance of an unlawful act." United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir.1986) (citing United States v. Polowichak, 783 F.2d 410 (4th Cir.1986)). Ernest asserts that the government failed to prove the existence of a business enterprise. The term business enterprise "means a continuous course of conduct, rather than a sporadic, casual, individual or isolated violation." Gallo, 782 F.2d at 1194-95. Ernest argues that the evidence showed only two instances of possession with intent to distribute: the present offense and the subsequent offense seven months later. Ernest asserts that two instances do not constitute a business enterprise.
 
 
 16
 We believe that the evidence showed more than two instances. Lewis testified that she had been at Ernest's house on several occasions and seen drug paraphernalia there. In addition, she testified that while she was there, customers would come by and whistle at the window. When the customers whistled, Ernest either left or asked Lewis to leave so that he could conduct his business. In addition, Lewis testified that she and Ernest had had a conversation about the value of crack cocaine, and that Ernest had made statements about the ease of making money by selling drugs in the D.C. area. This evidence combines with the evidence of the trip to New York and the drug arrest seven months later to form strong support for the conclusion that Ernest was engaging in a business enterprise selling cocaine. We conclude that there was sufficient evidence to sustain the conviction on the Travel Count.
 
 IV
 
 17
 Ernest next asserts that the district court erred when it allowed the government to put in evidence of his conviction in state court for possession arising out of the drug arrest seven months after Ernest's arrest in this case. The district court allowed the evidence in for the limited purpose of proving business enterprise in the Travel Count, and the court gave the jury a limiting instruction to that effect.[1] Ernest asserts that this evidence should not have been admitted because the relevance of the evidence was outweighed by the unfair prejudice to him under Fed.R.Evid. 403. Rule 403 of the Federal Rules of Evidence provides:
 
 
 18
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 19
 Fed.R.Evid. 403. Ernest argues that the evidence of his conviction on the subsequent possession offense was too prejudicial despite the limiting instruction given by the court. He argues that "[t]he limiting instruction was simply not sufficient to overcome the substantial danger of unfair prejudice that evidence of the conviction would have with respect to the other two counts of the indictment." Brief for Appellant at 16. We do not agree.
 
 
 20
 "Questions related to the relevance of evidence are within the discretion of the district court, and this includes the question of whether the probative value of certain evidence is outweighed by the risk of undue prejudice its admission presents." Person v. Miller, 854 F.2d 656, 667 (4th Cir.1988). We review the district court's decision to admit such evidence under an abuse of discretion standard. See United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir.1990); Person v. Miller, 854 F.2d at 667.
 
 
 21
 In this case, we do not find that the district court abused its discretion. The evidence of Ernest's arrest seven months after his arrest in this case was extremely important to the government's ability to prove the existence of a business enterprise. Without that evidence, the government had only the testimony of Lewis, who had given some inconsistent testimony at her own trial. The evidence of the paraphernalia discovered during the second arrest was highly relevant and tended to corroborate Lewis' testimony as to the paraphernalia she had seen at Ernest's house in Washington. The court determined that the relevance of this evidence was not outweighed by the prejudice to Ernest if the evidence came in, and the court allowed the evidence in. The court gave a limiting instruction to the jury to consider the evidence only for the purpose of determining whether Ernest had violated the Interstate Travel Act. We believe that this was proper, and that the court did not abuse its discretion in admitting the evidence under these circumstances.
 
 V
 
 22
 The remaining issues raised by Ernest on appeal regard the sentence imposed by the district court. First, Ernest argues that the district court erred in increasing his base offense level two levels for his role in the offense. The district court found that Ernest was an organizer, leader, manager, or supervisor in the criminal activity under Section 3B1.1(c) of the Federal Sentencing Guidelines.[2] A determination about a defendant's role in the offense is a factual determination which will not be set aside unless clearly erroneous. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.1990); United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989).
 
 
 23
 In this case, Lewis testified that Ernest had told her that he had people selling drugs for him. In addition, he manipulated her into carrying the drugs on the airplane for him. The evidence supported a finding that Ernest was a leader and organizer of criminal conduct. It was unclear from the evidence exactly how many people he organized; therefore, it was proper to increase Ernest's offense level under § 3B1.1(c) which does not require a certain number of persons to have been organized. We find that the court's finding was not clearly erroneous on the evidence in this case.
 
 
 24
 The second sentencing issue raised by Ernest on appeal concerns an increase in his base offense level for obstruction of justice. The district court increased Ernest's base offense level two levels for obstruction of justice under Guideline Section 3C1.1 of the Federal Sentencing Guidelines.[3] Application Note 3(a) to § 3C1.1 provides that a defendant's offense level should be enhanced for "threatening, intimidating or otherwise unlawfully influencing a co-defendant or witness ... directly or indirectly or attempting to do so." U.S.S.G. § 3C1.1, application note 3(a).
 
 
 25
 On appeal, we review the district court's determination regarding obstruction of justice under the clearly erroneous standard. See United States v. Saintil, 910 F.2d 1231, 1233 (4th Cir.1990). The evidence in this case showed that Ernest tried to persuade Lewis not to say anything to the authorities on several occasions. He promised that he would get her out of everything if she complied. We find that this evidence supports a finding of obstruction of justice, and that the district court's finding was not clearly erroneous.
 
 VI
 
 26
 To summarize, we hold that there was sufficient evidence to support Ernest's conviction on all three counts. In addition, we hold that the district court did not err in increasing Ernest's base offense level two levels for his managing role in the drug trade and two levels for his obstruction of justice. For these reasons, the convictions and sentence of Ernest are hereby affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The court instructed the jury as follows: "Ladies and gentlemen, this evidence--you may consider this evidence for one reason and one reason alone. You may consider it only with respect to Count III, which charged in this instance the promotion, management or intent to promote, manage, establish, carry on or facilitate the promotion of a business enterprise involving the distribution and possession with intent to distribute 50 grams or more of a mixture and substance described in Title 21, United States Code, which contains cocaine base, commonly known as "crack."
 You're to consider this testimony only with respect to whether or not--under the Court's ultimate instructions, a business enterprise is required by the law under that charge.
 
 
 [2]
 Section 3B1.1(c) provides: If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." United States Sentencing Commission, Guidelines Manual, § 3B1.1(c) (Nov. 1989) (hereinafter U.S.S.G.)
 
 
 [3]
 Section 3C1.1 of the Guidelines provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1