46 F.3d 1127
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Todd Antonio FOSTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Troy V. CLEVELAND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald P. SMALL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Malik Ormasha YARBOROUGH, Defendant-Appellant.
 Nos. 94-5255, 94-5256, 94-5257, 94-5258.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 9, 1994.
Decided: Jan. 30, 1995.
 
 ARGUED: Suzanne Little, Alexandria, VA, for Appellant Foster; George P. Doss, Jr., Alexandria, VA, for Appellant Cleveland; Robert E. Battle, BATTLE & BATTLE, Alexandria, VA, for Appellant Small; Alan H. Yamamoto, Alexandria, VA, for Appellant Yarborough. James L. Trump, Assistant United States Attorney, Alexandria, VA, for Appellee. ON BRIEF: Glen Trimper, Alexandria, VA, for Appellant Foster. Helen F. Fahey, United States Attorney, Laura Pellatiro Tayman, Assistant United States Attorney, Alexandria, VA, for Appellee.
 Before HALL, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants in this case were convicted of a number of charges relating to a cocaine trafficking conspiracy and associated crimes.
 
 
 2
 This appeal alleges a variety of errors in their trial and sentencing. We find no error in the trial proceedings, and affirm the appellants' convictions and sentences.
 
 I.
 
 3
 On October 5, 1993, Todd Foster, Troy Cleveland, and Malik Yarborough, along with eight others, were charged with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. Sec. 846. On October 10, shots were fired at the home of Robert Coleman, one of the witnesses testifying on behalf of the government. Donald Small was charged in connection with this shooting. On November 4, 1993, Foster, Cleveland, Yarborough, and Small were all indicted by a grand jury on the conspiracy charge, as well as various substantive counts. The eight other defendants pled guilty, four prior to indictment, and another four after arraignment on November 15.
 
 
 4
 At trial in January of 1994, the government presented evidence that the four defendants were members of a large ring of drug dealers responsible for the distribution of sizable amounts of crack cocaine in the Fairfax County area of Virginia from 1990 until 1993. The evidence showed that Foster and his friend Anthony Cotton began dealing drugs in 1990, supplied by James Kirby Burks, who in turn was supplied by Kevin Backstrom. Foster and Cotton sold the crack to other dealers, including defendants Cleveland, Small, and Yarborough. Additional dealers in the network included Brian Brown, Robert Coleman, Dereck Hannah, Thomas McClendon, Wayne Kennie, and several others. Many of these dealers, including the ringleader Cotton, testified for the prosecution.
 
 
 5
 Cotton testified that he and Foster were partners. They bought cocaine together, sold it, and split their profits equally. He further testified that Cleveland, Yarborough, and Small received a number of drug deliveries from him and Foster during 1991 through late 1992 or early 1993. Cotton estimated that during this period he distributed about 2.5 kilograms to Cleveland, 7.5 to 10 kilograms to Yarborough, and about 500 grams to Small. The dealers that Cotton supplied all knew each other, sometimes pooled their money to buy drugs from Cotton, and bought from one another when Cotton was unavailable. Many of them kept in touch with one another by pager. The evidence also showed that each was often present when Cotton sold to others in the group.
 
 
 6
 In April of 1993, Cotton ceased most of his drug-dealing activities. The others continued to deal with each other on a regular basis. Robert Coleman testified that he regularly bought crack from Cleveland, Yarborough, and Small. Cleveland, Yarborough, and Coleman traveled to New York together to buy drugs. These dealers also shared a number of customers, including Carlton Kennie, Dwight Gordon, and Thomas McClendon, all of whom testified that they bought crack from Yarborough and Cleveland.
 
 
 7
 When Foster was arrested at his house, police seized cellular telephones, two pagers, cash, and one hundred small bags of cocaine. Similarly, when Yarborough was arrested, a cellular phone, a pager, gun cases and holsters, a bullet-proof vest, and about an ounce of crack were found in his home. During Cleveland's arrest, police seized a shotgun and a pager. At the time of Small's arrest, his car contained a .44 magnum, another handgun, and quantities of crack and other drugs. Razor blades, scales, a 9mm pistol, and a pager were also found in his apartment. Small's girlfriend Kathy Davis was present at the time of the arrest, and later testified that the .44 belonged to Small. A .44 or .357 magnum was used in the drive-by shooting at the Coleman residence.
 
 
 8
 Based on this evidence, the jury found Foster guilty of conspiracy, as well as possession with intent to distribute cocaine base. Cleveland was convicted of conspiracy and distribution of cocaine base. Yarborough was convicted of conspiracy, possession with intent to distribute, and distribution. Finally, Small was found guilty of conspiracy, possession with intent to distribute, use of a firearm in relation to a drug offense, and witness intimidation.
 
 
 9
 A sentencing hearing was held on March 18, 1994. Foster and Yarborough were sentenced to life in prison. Cleveland was sentenced to thirty years, and Small received two consecutive sentences totaling thirty-five years. Defendants now appeal.
 
 II.
 
 10
 The four defendants raise several claims of error in their trial. All of these claims are without merit.
 
 A.
 
 11
 Appellants first attack the sufficiency of the evidence underlying their convictions. Foster, Cleveland, and Yarborough argue that the evidence failed to show the existence of a conspiracy. They maintain that there was no proof of an "agreement" between the defendants, and characterize their relationships as no more than "buyer-seller" arrangements.
 
 
 12
 We cannot agree. The evidence here is assessed in the light most favorable to the government, and the verdict will stand unless no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Jones, 735 F.2d 785, 790 (4th Cir.1984). There is voluminous evidence in this case from which a reasonable jury could find the existence of a conspiracy. Cotton, the central figure in the conspiracy, described in detail his drug connections to Foster, Cleveland, and Yarborough, all of whom were in frequent contact with one another. This testimony was corroborated by other witnesses such as Backstrom, McClendon, and Coleman, as well as by Cotton's phone records. Additional evidence showed extensive interaction among all the other dealers, including buying and selling drugs, meetings, phone calls, and trips together.[1]
 
 
 13
 These connections are even stronger proof of a conspiracy than the case of United States v. Banks, 10 F.3d 1044 (4th Cir.1993), which found a conspiracy based on a "loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market...." 10 F.3d at 1054. Here, by contrast, all the defendants were well-integrated into a common system of distribution. Thus, the evidence in this case was more than sufficient to sustain the conspiracy convictions of Foster, Cleveland, and Yarborough.
 
 
 14
 Small also makes a sufficiency claim, arguing that the evidence did not show that he possessed the drugs found in his car when he was arrested, nor that he intended to distribute them. Again, however, the evidence was clearly more than adequate. Small was found in a car containing a packet of crack cocaine, which a jury may conclude is constructive possession. United States v. Roberts, 881 F.2d 95, 99 (4th Cir.1989). Police also found razor blades coated in cocaine residue, scales, weapons, and other drug paraphernalia in his home and car. Moreover, there was extensive testimony that Small was a crack dealer. Any rational trier of fact could thus conclude Small was guilty of the crime charged.
 
 B.
 
 15
 All four appellants also argue that the court erred by failing to give a multiple conspiracy instruction. They contend that because Cotton stopped dealing in 1993, there was a separate conspiracy after his withdrawal. Additionally, Small argues he could not be a member of the same conspiracy because he was charged with threatening one of the indicted co-conspirators. The law is clear that changes in the membership or roles of co-conspirators does not convert a single conspiracy into a multiple conspiracy. Banks, 10 F.3d at 1053-56. Nor does the fact that one threatens a co-conspirator automatically create a separate conspiracy. Because no evidence of separate conspiracies was offered, appellants were not entitled to a multiple conspiracy instruction.
 
 C.
 
 16
 Small next challenges the government's use of Kathy Davis as a rebuttal witness. Davis was called to rebut Small's suggestion that the .44 magnum found in the trunk of his car did not belong to him. Small argues that Davis was not called in rebuttal, but rather to shore up a weak point in the prosecution's case-in-chief regarding Small's ownership of the gun. This contention is wholly without merit. The trial court has wide discretion to control the order of witnesses, and the admission of Davis' testimony in rebuttal was in no way an abuse of that discretion. See United States v. Johnson, 802 F.2d 1459, 1464 (D.C.Cir.1986).
 
 D.
 
 17
 Finally, Small alleges several discovery violations by the prosecution. In particular, he contends that the government failed to turn over Cotton's statement that Small was not ordered to shoot at the Coleman residence, Coleman's plea agreements, and the results of fingerprint analyses. He argues that these omissions were a breach of the rule of Brady v. Maryland, 373 U.S. 83 (1963).
 
 
 18
 In fact, Small was provided with all available information in these categories prior to trial. Appellant conveniently ignores the fact that he was given complete copies of both Cotton's and Coleman's plea agreements and statements of fact. Cotton's agreement specifically referenced the fact that he disputed the allegation that Small had been ordered to shoot at Coleman's house. Likewise, Coleman's agreement laid out all the relevant details of his plea. Small maintains, however, that there must have been another Coleman plea agreement from May 5.[2] This charge is in error; the plea dated August 23 was designated as the complete and integrated plea agreement. Finally, the government has stipulated that the additional fingerprint information Small argues was withheld simply does not exist. In sum, there were no discernable discovery violations in this case.
 
 III.
 
 19
 Appellants also raise various challenges to their sentences. Again, there is no merit to these arguments.
 
 A.
 
 20
 Foster, Cleveland, and Yarborough contest certain factual findings in their sentencing. Factual findings underlying sentencing will not be reversed unless clearly erroneous. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.1990). Foster, Cleveland, and Yarborough each received a three-level increase under Sec. 3B1.1(b) of the Sentencing Guidelines for having played "aggravating roles" in the conspiracy by acting as "managers or supervisors." Cotton, Coleman, and others testified that each of these three appellants stood higher-up in the chain of dealers than their co-conspirators. Foster was Cotton's partner at the top of the local chain. Cleveland and Yarborough both sold to other dealers, such as Dwight Gordon and Wayne Kennie. Furthermore, there was evidence that Cleveland employed juveniles to distribute crack. The factual findings underlying this increase were therefore not clearly erroneous.
 
 
 21
 Yarborough also contests the factual finding underlying his Sec. 2D1.1(b)(1) increase for possession of a gun. Coleman, Kennie, and Clark all testified at trial that Yarborough possessed or used a gun during the conspiracy. Police found gun cases and holsters in Yarborough's residence. Moreover, there was abundant evidence that other conspirators used guns. Possession of firearms by co-conspirators is attributable to Yarborough under Sec. 2D1.1(b)(1) if such possession was in furtherance of the conspiracy and was reasonably foreseeable to him. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). Thus, this challenge fails.
 
 
 22
 Next, Foster's Presentence Report found that he was responsible for distributing more than fifteen kilograms of crack cocaine. He argues that the evidence showed only amounts purchased, not amounts distributed. This finding, however, was supported by overwhelming evidence at trial that Cotton and Foster jointly purchased and then distributed two kilograms of crack every three or four days from June 1992 to December. Cotton's estimates of his sales during this period alone total well in excess of fifteen kilograms. The amounts Cotton and Foster dealt together are attributable to Foster. United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir.1993). Given this evidence, the court's reliance on the Presentence Report finding was not in error.
 
 B.
 
 23
 Small makes two challenges to the calculation of his sentence under the Guidelines. First, he objects to his two-level increase under Sec. 3C1.1 for obstruction of justice, arguing that the obstruction increase duplicates his conviction for conspiracy conduct and so is "double-counting." The Guidelines, however, specifically state that when a defendant is convicted of both an obstruction offense and an underlying offense, the court is to group the two offenses under U.S.S.G. Sec. 3D1.2(c); the offense level for this group will be the greater of the offense level for (1) the obstruction count, or (2) the underlying count increased by the 2-level adjustment under Sec. 3C1.1. See U.S.S.G. Sec. 3C1.1, comment (n.6). Here, the grouping of the underlying conspiracy count and the witness intimidation count was properly carried out.
 
 
 24
 Second, two points were added to Small's criminal history based on a prior conviction for possession of PCP. Small argues that this conviction actually went to the conspiracy charged here, and so should not have been assessed as a prior offense. The PCP conviction, however, did not involve conduct relevant to the instant offense under Sec. 1B1.3 or Sec. 4A1.2. This case was solely about conspiracy to distribute crack cocaine, meaning that the only relevance of Small's PCP possession was as it was used: a prior offense.
 
 IV.
 
 25
 The claims of error herein lack merit. The defendants' convictions and sentences are
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Appellants' challenges to the credibility of this evidence cannot be credited, as credibility was a question for the jury. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982)
 
 
 [2]
 This claim appears to derive from a misinterpretation of Coleman's trial testimony. Coleman said he began cooperating with the government on May 5, not that May 5 was the date of his plea agreement