OPINION
PER CURIAM.
Ernest Coble was convicted in the United States District Court for the Middle District of North Carolina of attempting to obstruct and impede the due administration of the tax laws, pursuant to 26 U.S.C.A. § 7212(a), for repeatedly seeking to rely upon an invalid “comptroller warrant” to discharge his tax liability and to receive a substantial tax refund from the Internal Revenue Service. At sentencing, the district court departed two levels downward, finding that Coble’s conduct constituted a single act of aberrant behavior and that a combination of several discouraged factors, such as Coble’s age and military service, justified departure. The Government appeals the district court’s downward departure. We conclude that Coble’s conduct did not constitute a single act of aberrant behavior and that the factors cited by the district court, either individually or in combination, are not present to an extraordinary degree so as to warrant departure. Accordingly, we reverse the district court’s downward departure and remand for resentencing.
I.
Coble, who is retired and in his 70s, is a former commercial airline pilot who served honorably in the military in two wars. Coble has had various problems with the IRS. On December 11, 1995, the IRS sent Coble a deficiency notice in the amount of $264,904.67. On December 20, 1995, Coble sent a letter to the IRS by certified mail containing a “comptroller warrant” for $529,808.00, or nearly twice the tax liability stated in a December 11, 1995 deficiency notice. Coble demanded that the IRS refund the difference and threatened to bill the IRS interest if it failed promptly to repay him. The comptroller warrant, as it turned out, was an invalid document sent to Coble by Leroy Schweitzer, head of the Freemen organization in Montana. The warrant was made payable jointly to Coble and the IRS.[1] After the IRS credited the *196 warrant and the Federal Reserve rejected the warrant as worthless, the IRS removed the credit from Coble’s account. (J.A. at 33, Appellant’s Br. at 4.) Had the Federal Reserve honored the warrant, Coble would have received a $264,921.10 refund.
On February 1, 1996, IRS agent Bobby Shanks visited Coble to interview him about the warrant. Shanks informed Coble that the warrant was worthless, but Coble insisted that the warrant was valid and that he continued to expect the IRS to refund his money. On February 13, 1996, the IRS received a follow-up letter from Coble dated February 1, 1996, apparently written immediately after Shanks’s visit. The letter referred to the IRS’s refusal to honor the warrant and it demanded that the IRS accept the warrant as payment for Coble’s tax liability. On February 20, 1996, the IRS received a second follow-up letter, dated February 14, 1996 and signed by Coble, again alleging that Coble’s tax liability had been discharged as a result of the warrant. Attached to the letter was a copy of a previous deficiency notice, on which Coble had stamped “[rjefusal for cause without dishonor.” (J.A. at 39.)
On September 23, 1999, Coble was convicted in the United States District Court for the Middle District of North Carolina of violating 26 U.S.C. § 7212(a) by attempting to obstruct and impede the due administration of the tax laws.[2] The Presentence Report (PSR) assigned Coble a total offense level of fourteen, which included a base offense level of twelve and a two-point enhancement for obstruction of justice based upon his inaccurate testimony concerning the date of Shanks’s visit.[3] The district court declined to impose the two-point enhancement for obstruction of justice, finding that the inaccuracy was immaterial. (J.A. at 234.) The district court also departed downward by two levels, sentencing Coble to three years probation and six months of home confinement. The Government timely noted its appeal of Coble’s sentence.
II.
The only issue on appeal is whether the district court abused its discretion in departing downward. The district court relied upon two bases to depart downward: (1) that Coble’s “mailing of the check in December 1995 was a single act of aberrant behavior, inconsistent with the defendant’s conduct throughout his life, except in his ongoing battle with the [IRS],” (J.A. at 234) and (2) that a combination of several discouraged factors, such as age, employment record, community ties, and record of service, were present “to such an extraordinary degree that it is an atypical case to place the defendant in a position *197 that he would be subject to an active sentence under the circumstances here.”[4] (J.A. at 234-35.) We review the district court’s decision to depart under the unitary abuse-of-discretion standard. Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Legal errors and clearly erroneous factual findings constitute abuses of discretion. See United States v. DeBeir, 186 F.3d 561, 566-67 (4th Cir.1999).
A. Single Act of Aberrant Behavior
The Sentencing Commission has noted that it “has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures.” United States Sentencing Commission, Guidelines Manual, Ch. 1, Pt. A, 4(d), p.s. (1998). Courts interpreting this policy statement have concluded that single acts of aberrant behavior may justify sentences below the guideline ranges. In United States v. Glick, 946 F.2d 335 (4th Cir.1991), we set forth the standards for determining whether conduct constitutes a single act of aberrant behavior. In reversing the district court’s departure, we stated that
Aberrant behavior, therefore, means something more than merely a first offense. A single act of aberrant behavior suggests a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable. Because of the extensive planning, number of actions involved, and length of time over which Glick planned and perpetrated his offense, his actions do not constitute a single act of aberrant behavior. The district court erred in so concluding.
Id. at 338 (internal quotation marks and citation omitted and emphasis added).[5] Applying this standard to the present case, we cannot agree that Coble’s conduct constituted a single act of aberrant behavior *198 that warrants a departure. The record reveals that Coble’s conduct was not “a spontaneous and seemingly thoughtless act” but rather was “the result of substantial planning” and was “the result of a continued reflective process” rather than an impulsive act for which a defendant may arguably be less accountable. The act of sending the warrant reflects substantial planning and a lack of spontaneity on Coble’s part because, in sending the warrant, Coble took the warrant, calculated his “refund,” wrote a letter to the IRS to accompany the warrant, and then sent the warrant and letter by certified mail. Coble then sent additional correspondence dated February 1, 1996 (received by the IRS on February 13, 1996), and February 14, 1996 (received by the IRS on February 20, 1996), demanding that the Government honor his warrant notwithstanding the fact that Agent Shanks had already informed Coble on February 1, 1996 that the warrant had been dishonored.[6] Coble’s acts of sending the letters, two months after sending the warrant and within days after Shank’s visit, undermines the argument that his initial act of sending the warrant was the product of a thoughtless, aberrant moment based upon a misunderstanding of the warrant’s validity, and demonstrates that additional time and reflection would not have deterred Coble from seeking to use the warrant to discharge his tax liability and obtain an improperly issued “refund.” We therefore reject this basis for the district court’s downward departure.
B. Combination of Discouraged Factors
The district court also relied upon a combination of discouraged factors to justify its downward departure. In particular, the district court identified physical condition or age, mental capacity, employment record, lack of criminal record for over 70 years, community ties and service to his country, single act of aberrant behavior,[7] and emotional toll arising from his battle with the IRS as factors that combined to warrant a downward departure. The district court conceded that none of these factors, considered singularly, warranted departure, but it concluded that these circumstances, in combination, were present “to such an extraordinary degree” that departure was appropriate. (J.A. at 234-35.)
The commentary to U.S.S.G. § 5K2.0 provides that
The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the “heartland” cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.
U.S.S.G. § 5K2.0, comment. Thus, under some circumstances, the district court is permitted to find that a combination of circumstances creates an extraordinary case sufficient to warrant a downward departure. See DeBeir, 186 F.3d at 573 (“[T]he Guidelines clearly contemplate that even if none of the factors at issue taken individually warrants a departure, the cumulative effect of all of the circumstances *199 of the case may, in some instances, bring it outside the heartland.”).
In Koon v. United States, 518 U.S. 81, 116 S.Ct. 2085, 135 L.Ed.2d 392 (1996), the Supreme Court set forth a multi-step analysis that courts must undertake in determining whether a departure is appropriate. See id. at 95-96, 116 S.Ct. 2035. Under the Koon framework, the district court must impose a sentence within the guideline range unless it determines that individual facts present in the case take the case outside the “heartland” of typical cases embodied in the conduct covered by the applicable guideline. See id. at 92-95, 116 S.Ct. 2035. Before departing, the sentencing court should determine whether the factor on which it is considering a departure has been forbidden, encouraged, discouraged, or unmentioned as a possible basis for departure by the Sentencing Commission. See id. at 95-96, 116 S.Ct. 2035. Forbidden factors may never be grounds for departure.[8] If the factor being considered is a discouraged factor,[9] it may support a departure only if the court finds that it is present to such an extraordinary degree that it takes the case outside the heartland of ordinary cases encompassed by the guidelines. Id. Similarly, if a factor is encouraged but the applicable guideline takes it into account, then it may justify a departure only if it is present to an exceptional degree or in some other way makes the ease different from the ordinary case where the factor is present. Finally, as noted above, under the commentary to § 5K2.0, in an extraordinary case, a combination of factors which are “not ordinarily relevant” to a departure decision may cause the case to “differ[ ] significantly from the ‘heartland’ cases ... in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case .” U.S.S.G. § 5K2.0, comment. A departure would be possible in such a case, but such a case would be “extremely rare.” United States v. Rybicki, 96 F.3d 754, 758 (4th Cir.1996).
Applying this framework to the present case, we first must determine whether the factors relied upon by the district court — physical condition or age, employment record, lack of criminal record for over 70 years, community ties and service to his country, and emotional toll arising from his battle with the IRS — are discouraged, encouraged, or forbidden factors. Four of the factors — military service and public service; employment history; family ties and community ties; and emotional toll arising from his battle with the IRS — are discouraged factors. See U.S.S.G. § 5H1 .1, p.s. (age);[10] § 5H1.11, p.s. (military service and public service); § 5H1.5 (employment record); § 5H1.6, p.s. (family ties and community ties).[11] *200 Coble’s clean criminal record for over 70 years is essentially the same as being a first time offender, which is a factor that is already considered by the guidelines. See United States v. Sheffer, 896 F.2d 842, 845 (4th Cir.1990) (“In considering the criminal history of the defendant, the Sentencing Guidelines do take into account a defendant’s status as a first-time offender.”); cf. Koon, 518 U.S. at 111, 116 S.Ct. 2035 (“We further agree with the Court of Appeals that the low likelihood of petitioners’ recidivism was not an appropriate basis for departure. Petitioners were first-time offenders and so were classified in Criminal History Category I.”). Thus, these factors are sufficient to support departure only if they are present to an extraordinary degree so as to take the case outside the heartland of ordinary cases encompassed by the guidelines.
Nothing in the record indicates that any of these factors, individually or in combination, are present to an extraordinary degree so as to warrant departure. The district court, in finding that the factors in combination presented an atypical case, did not articulate how Coble’s situation was unusual, except to state that
I don’t think that there has been a federal court sentencing anyone with a fifteen to twenty-one month initial guideline for obstruction of the [IRS] that is 75 years old, with no criminal record, a combat pilot in two wars, a 747 captain and who has attempted to use the warrant to satisfy a lien against his property from the IRS, which even though arguably valid, he nevertheless believed to be invalid and improper, and I think you do sincerely believe that, even though you may well be seriously misguided in this case.
(J.A. at 237.)
Of the factors that the district court combined to justify departure, the district court explicitly refused to find that Coble was feeble and infirm or that he had diminished capacity (J.A. at 225 (“I think it would be less than honest for the Court to do something about being aged and in-firmed in this case, as well as any diminished capacity type argument on the grounds at this time.”).) As to the emotional toll arising from his battle with the IRS, that could hardly be deemed unusual because any defendant in a lengthy dispute with the IRS would presumably be subject to a similar emotional toll. Cf. Koon, 518 U.S. at 110, 116 S.Ct. 2035 (finding an abuse of discretion in the district court’s reliance upon Koon’s career loss because “it is not unusual for a public official who is convicted of using his governmental authority to violate a person’s rights to lose his or her job and to be barred from future work in that field”); Rybicki, 96 F.3d at 758 (reaching a similar conclusion with respect to firearm handler’s deprivation of right to handle firearms or to vote). Thus, these factors fail to support a departure by themselves, and they do not come close to reflecting anything unusual about Coble’s case.
We do not believe, on the record before us, that combining these factors with the remaining factors- — employment record, lack of criminal record for over 70 years, community ties and service to his country — makes Coble’s case exceptional. Cf. Rybicki, 96 F.3d at 758 (rejecting the district court’s decision, in a case involving a similarly decorated veteran who was convicted of a non-violent crime, to depart *201 downward on the basis of “the confluence” of several factors that, standing alone, were each insufficient to warrant departure).[12]
None of the factors cited by the district court come close to being present to an exceptional degree and the district court failed adequately to explain how combining these factors makes them so. In other words, we simply do not agree that combining these factors causes Coble’s case to fall within the “extremely rare” circumstances warranting departure as contemplated by the commentary to § 5K2.0. We therefore reverse the district court’s decision to depart downward on the basis of the confluence of these factors because there is no indication that these factors, considered individually or jointly, are present to an exceptional degree so as to make Coble’s case atypical.[13]
*202 III.
In conclusion, Coble’s conduct was not a single act of aberrant behavior and the factors cited by the district court, both individually and in combination, are not present in an exceptional degree so as to make Coble’s case atypical. Accordingly, we reverse the district court’s downward departure and remand for resentencing.

REVERSED AND REMANDED.

. Schweitzer had sent these warrants, which have no financial value, to hundreds of people who had tax problems.

. Section 7212(a), which applies to "[attempts to interfere with administration of internal revenue laws,” provides,
(a) Corrupt or forcible interference. — Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force”, as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.
26 U.S.C.A. § 7212(a) (West 1989).

. At trial, Coble testified that Shanks visited him on March 3, 1996, rather than February 1, 1996.

. Although the Government argues that the district court erroneously departed on the basis of individual discouraged factors, such as age, the record shows that the district court rejected these factors as individual bases for departure and instead relied upon these factors only in combination. (See J.A. at 224-35 (explaining why departure was inappropriate based upon individual factors).)

. The Third, Fifth, Seventh, Eighth, Eleventh, and D.C. Circuits agree with our approach in United States v. Glick, 946 F.2d 335 (4th Cir. 1991). See United States v. Winters, 105 F.3d 200, 206-07 (5th Cir.1997) (stating that aberrant behavior "requires more than an act which is merely a first offense or out of character for the defendant” (internal quotation marks omitted)); United States v. Marcello, 13 F.3d 752, 761 (3d Cir.1994) ("Aberrant behavior must involve a lack of planning; it must be a single act that is spontaneous and thoughtless----”). The First, Second, Ninth, and Tenth Circuits disagree, concluding that a "totality of the circumstances” approach is more appropriate, under which a wide variety of extenuating circumstances are considered. See United States v. Grandmaison, 77 F.3d 555, 563 (1st Cir.1996) (holding that "determinations about whether an offense constitutes a single act of aberrant behavior should be made by reviewing the totality of the circumstances,” and that “spontaneity and thoughtlessness may also be among the factors considered, though they are not prerequisites for departure”); United States v. Takai, 941 F.2d 738, 743 (9th Cir.1991) (affirming district court’s decision to depart downward after finding that the defendants who pled guilty to bribery of and conspiracy to bribe an Immigration and Naturalization Service official, inter alia, received no pecuniary gain, had no criminal record, and had been influenced by a government agent). In Glick, we explicitly rejected the Ninth Circuit’s view "that a series of actions calculated to further criminal misconduct can be classified as aberrant behavior.” See Glick, 946 F.2d at 338 n. * (rejecting Takai).

. Although the letter dated February 1, 1996 apparently was sent the same day as Shank's visit, that letter referenced the fact that the warrant was dishonored. Thus, Coble presumably sent that letter after Shank's visit.

. As discussed above, we have already concluded that the district court misapplied the "single act of aberrant behavior” factor. We fail to see how the addition of a misapplied factor to the other factors adds anything to the equation.

. Examples of forbidden factors include race, sex, national origin, creed, religion, socioeconomic status, lack of guidance during youth, drug or alcohol dependence, and economic hardship. See United States v. Rybicki, 96 F.3d 754, 758 (4th Cir.1996).

. Examples of discouraged factors include family ties and responsibilities, education and vocational skills, and military, civic, charitable, or public service. See United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996).

. The policy statement provides that "[a]ge may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly then incarceration.” U.S.S.G. § 5H1.1, p.s.

. To the extent that the district court relied upon the duress arising from the economic hardship imposed by the IRS liens, that is a forbidden factor. See U.S.S.G. § 5K2.12 (coercion and duress) (stating that "[t]he *200 Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence”).

. In United States v. Rybicki, 96 F.3d 754 (4th Cir. 1996), the district court relied upon a combination of several factors, including that "Rybicki was a highly decorated Vietnam War veteran who had saved a civilian’s life during the My Lai incident and had an unblemished record of 20 years of service to his country, both in the military and in the Secret Service.” Id. at 758. We stated that
Rybicki’s 20 years of unblemished service to the United States and his responsibilities to his son and wife, both of whom have medical problems, are also factors that the Sentencing Guidelines have expressly addressed, instructing that they are ordinarily not relevant and therefore "discouraged.” Because the record does not indicate that these factors are present to an "exceptional” degree, they may not form the basis for a downward departure.
Id. (internal citations omitted).
The commentary to § 5K2.0 became effective on November 1, 1994 and superseded our prior holding in United States v. Goff, 907 F.2d 1441, 1447 (4th Cir. 1990), that a combination of factors that did not independently warrant departure could not provide a basis for departure. Although the district court in Rybicki relied upon a combination of factors that did not independently warrant departure, we did not explicitly address the applicability of the commentary to § 5K2.0 in that case, and it is unclear whether Rybicki was sentenced before or after the effective date of the commentary. We nevertheless find Rybicki instructive, at least to the extent that Rybicki’s military and public service, which, like Coble’s, was extensive and distinguished, was considered a discouraged factor that was not present to an exceptional degree.

. Although the dissent suggests that the district court's decision to depart downward in this case is wholly insulated from review pursuant to Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we disagree. Indeed, we have previously stated, in interpreting Koon, that "[w]hen a determination as to whether a factor is present to an exceptional degree merely amounts to an evaluation of a showing’s adequacy, we review the district court’s determination de novo to determine whether the district court abused its discretion.” United States v. Achiekwelu, 112 F.3d 747, 756 (4th Cir. 1997); see United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996) (stating that the evaluation of a showing’s adequacy is a legal question subject to de novo review); see also United States v. Barber, 119 F.3d 276, 283 (4th Cir.1997) (en banc) (stating that "the Court in Koon was quick to acknowledge, lest there be confusion on the point, that this standard would not shield erroneous legal conclusions from reversal.”).
Here, the district court’s conclusory "findings” fail adequately to explain how the combination of the several weak factors in this case aggregate to form an exceptional case justifying departure, and we therefore cannot agree that there has been an adequate showing that the combination of factors relied upon by the district court are present to an exceptional degree. We, of course, recognize the possibility, as explicitly left open by the Guidelines, that a district court may support a departure decision by aggregating several factors that, by themselves, would each be insufficient to justify departure. Thus, the dissent is correct that our analysis in United States v. Goff, 907 F.2d 1441 (4th Cir. 1990), no longer governs. But, as noted above, the Guidelines reserve this possibility for "extremely rare” cases, and we cannot see how a district court’s use of mere conclusions can be sufficient to transform an otherwise unexceptional case into an "extremely rare” one as envi *202 sioned by the Guidelines. Indeed, we believe that accepting the dissent’s view would effectively eviscerate our role in the appellate process by taking the appellate court out of the picture altogether no matter how scant, conclusory, or unsupported the district court’s findings may be in support of departure. Although, as a district court judge, we can understand our dissenting colleague’s interest in doing so, we respectfully decline to adopt that position here.