**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

NORMAN LEWIS HAYES,
*Defendant-Appellant.*

No. 02-4597

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PHILLIP RAY FREEZE,
*Defendant-Appellant.*

No. 02-4605

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GEORGE ALLEN GREESON,
*Defendant-Appellant.*

No. 02-4610

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GEORGE THOMAS FAIL,
*Defendant-Appellant.*

No. 02-4651

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-02-25, CR-02-26)

Submitted: May 29, 2003

Decided: June 23, 2003

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Thomas N. Cochran, Assistant Federal Public Defender, Greensboro, North Carolina; James E. Quander, Winston-Salem, North Carolina; Christopher R. Clifton, Winston-Salem, North Carolina; Walter L. Jones, Greensboro, North Carolina, for Appellants. Anna Mills Wagoner, United States Attorney, Angela H. Miller, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

George Allen Greeson, Norman Lewis Hayes, Phillip Ray Freeze, and George Thomas Fail all pled guilty to knowingly engaging in the business of firearms dealing without a license, 18 U.S.C.

§ 922(a)(1)(A) (2000). Hayes and Freeze were sentenced to terms of thirty-seven months imprisonment. Greeson received a sentence of forty-six months imprisonment. Fail was sentenced to forty-one months imprisonment. All appeal their sentences, alleging that the district court erred in using the enhanced base offense level for an offense involving a semiautomatic assault weapon as defined in 18 U.S.C. § 921(a)(30)(B) (2000). *See U.S. Sentencing Guidelines Manual* § 2K2.1(a)(5) (2001). Freeze also argues that the semiautomatic assault weapon should not have been considered relevant conduct in his case. Greeson maintains that the district court's decision not to depart downward in his case is reviewable for abuse of discretion and, alternatively, that the court mistakenly believed that it lacked authority to depart. We affirm.

Between October 27, 2001, and January 12, 2002, agents conducting an investigation for the Bureau of Alcohol, Tobacco, and Firearms (ATF) observed George Allen Greeson, Norman Lewis Hayes, and Phillip Ray Freeze selling firearms together on numerous occasions at the Buckthorn Flea Market in Mebane, North Carolina. None of the defendants were licensed to sell firearms, and Greeson had been warned in 1989 by the ATF that a federal firearms license was required for the sale of firearms. On December 8, 2001, the agents observed Greeson sell a Norinco SKS semiautomatic rifle with a collapsible stock, detachable magazine, affixed bayonet, and pistol grip. Firearms with these characteristics are defined as semiautomatic assault weapons in § 921(a)(30)(B). During the same period, the agents observed George Thomas Fail selling firearms at the flea market with Billy Ray McLeod. Neither Fail nor McLeod were licensed to sell firearms. On November 17, 2001, the agents bought an SKS "Black Beauty" semiautomatic rifle with a collapsible stock and bayonet from Fail. This weapon also met the requirements for a semiautomatic assault weapon under § 921(a)(30)(B).

All four defendants were arrested on January 12, 2002. Greeson, Hayes, and Freeze entered guilty pleas to the charge of selling firearms without a federal license. Fail went to trial on the same charge, but entered a guilty plea in the middle of trial. All four defendants received an enhanced base offense level of 18 under USSG § 2K2.1(a)(5) because their offenses involved a firearm described in § 921(a)(30).

Appellants contested the enhanced base offense level[1] under § 2K2.1(a)(5), noting that the Violent Crime Control Act of 1994 banned the manufacture, transfer, or possession of semiautomatic assault weapons as of September 13, 1994, *see* 18 U.S.C.A. § 922(v)(1) (West 2000 & Supp. 2002), but that qualifying weapons lawfully possessed before that date were exempted under 18 U.S.C. § 922(v)(2) (2000). They asserted that the government could not prove whether the semiautomatic assault weapons in question had been manufactured after September 13, 1994, and that the weapons should, therefore, be treated as lawful, "pre-ban" weapons that could be lawfully possessed and transferred. Consequently, they argued, the guideline enhancement should not be applied.

The government conceded that it could not prove the date the weapons were manufactured and that they should be treated as a "pre-ban" weapons. However, the government argued that the enhanced base offense level should apply because the guideline excluded from consideration weapons exempted under 18 U.S.C. § 922(v)(3) (2000),[2] but not those exempted under § 922(v)(2). *See* USSG § 2K2.1, comment. (n.3) ("A 'firearm described in 18 U.S.C. § 921(a)(30)' (pertaining to semiautomatic assault weapons) does not include a weapon exempted under the provisions of 18 U.S.C. § 922(v)(3)."). The district court determined that the enhanced base offense level applied regardless of whether the firearms in question were "pre-ban" or "post-ban."

On appeal, Appellants first challenge this ruling. Generally, an issue that turns primarily on the legal interpretation of a guideline is

---

[1]Greeson raised this issue before he was sentenced. Although Hayes and Freeze had already been sentenced, the district court set aside their sentences to allow them to file supplemental memoranda adopting the issue. After the issue was resolved at Greeson's sentencing hearing, the district court resentenced Hayes and Freeze to the same terms it had initially imposed.

[2]This subsection exempts weapons listed in Appendix A to § 922, manually operated firearm, inoperable and antique firearms, semiautomatic rifles that cannot use a detachable magazine holding more than 5 rounds of ammunition, and semiautomatic shotguns that cannot hold more than 5 rounds of ammunition.

reviewed de novo. *United States v. Kinter*, 235 F.3d 192, 195 (4th Cir. 2000). Because the government presented no evidence as to the age of the weapons in question and agreed that they should be considered pre-ban weapons, we will also treat the weapons as pre-ban weapons.

Appellants stress the fact that none of them were legally prohibited from possessing firearms. They renew their argument that the enhanced base offense level provided in § 2K2.1(a)(5) should not be applied to semiautomatic assault weapons that are lawfully possessed. They contend that the Sentencing Commission exceeded its authority when it created an enhancement for possession of a semiautomatic assault weapon by a non-prohibited person without including an exemption similar to that in § 922(v)(2) for weapons that were lawfully possessed before the enactment of the statute.

Appellants further argue that the statute controls over the guideline, citing *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (construing Amendment 506 to USSG § 4B1.1). They suggest that this court should "avoid the statutory/guideline conflict" by "harmoniz[ing] USSG § 2K2.1(a)(5) with 18 U.S.C. §§ 921(a)(30) and 922(v) to exclude offenses involving lawfully possessed firearms by non-prohibited persons." (Appellants' Br. at 16). They also rely on *United States v. Palmer*, 183 F.3d 1014, 1015 (9th Cir. 1999), which held that the sentencing court erred in using a prior drug conviction for which the defendant's civil rights had been restored to justify an enhanced base offense level under § 2K2.1(a)(4)(A), although the commentary to § 2K2.1 and USSG § 4A1.2, read together, require consideration of the conviction.

However, we are persuaded that the enhanced base offense level was properly applied because the firearms at issue meet the definition of semiautomatic assault weapon in § 921(a)(30)(B), and neither that portion of the statute nor the guideline exempts pre-ban weapons. The exemptions in § 922(v)(2) and (v)(3) apply only to convictions for possession of certain semiautomatic assault weapons. Appellants were not prosecuted for illegally possessing the semiautomatic assault weapons. Appellants were convicted of knowingly selling firearms without a federal firearms license. The guideline provision which provides an enhancement for illegally selling a semiautomatic assault weapon does not conflict with § 922(v) or exceed the authority of the

Sentencing Commission. Section 922(v) provides no benefit to a person convicted of engaging in the business of illegally selling firearms without a license. We conclude that the district court did not err in finding that the exemption in § 922(v)(2) from prosecution for possession of certain semiautomatic assault weapons does not exclude an enhanced base offense level for an offense involving such weapons when the defendant has been convicted of illegally selling firearms without a license.

Next, Freeze maintains that the district court erred in giving him the enhanced base offense level under § 2K2.1(a)(5) because the Norinco SKS semiautomatic assault weapon that Greeson sold to a customer at the flea market on December 8, 2001, was not relevant conduct as to him. He asserts that he was not present when Greeson sold the rifle on December 8, 2001, or when it was displayed to Agent Cates on November 25, 2001. Therefore, he argues, the government did not show that Greeson's sale of such a weapon was either reasonably foreseeable to him or within the scope of his agreement. *See* USSG § 1B1.3(a)(1)(B) & comment. (n.2) (defendant in a jointly undertaken criminal activity is responsible for all reasonably foreseeable acts of others done in furtherance of the jointly undertaken criminal activity). Whether the semiautomatic assault weapon was reasonably foreseeable and within the scope of Freeze's agreement is a factual question that is reviewed for clear error. *United States v. Harrison*, 272 F.3d 220, 223 (4th Cir. 2001), *cert. denied*, 123 S. Ct. 162 (2002).

Agent Cates testified that, in a statement made after his arrest, Freeze admitted that he had assisted Greeson and Hayes in selling firearms at the flea market for four or five years. There is no information in the record that Freeze placed any limits on the types of firearms he would sell. Although the district court decided that a number of stolen guns found in Greeson's vehicle on the day the defendants were arrested were not attributable to Freeze or Hayes because the government could not prove that the stolen guns were within the scope of their agreement, those weapons were not sold or displayed at the flea market. The court so found because Greeson was arrested on his way to the flea market and the district court decided that there was insufficient evidence from which to conclude that Greeson intended to sell the stolen guns he had with him at the flea market.

Unlike the stolen weapons, the qualifying semiautomatic assault weapon was sold as part of the routine business that Freeze, by his own admission, participated in for several years. We conclude that the district court did not clearly err in treating the weapon as relevant conduct as to Freeze.

Greeson seeks review of the district court's decision not to depart based on his age (he was eighty-two when he was sentenced) or his health. However, he acknowledges that our precedents preclude appellate review when a defendant challenges the sentencing court's decision not to depart below the guideline range, *United States v. Bayerle*, 898 F.2d 28, 31 (4th Cir. 1990), except in those cases where the district court's decision not to depart is based on a mistaken belief that it lacks legal authority to depart. *United States v. Hall*, 977 F.2d 861, 863 (4th Cir. 1992). He also recognizes that, in this circuit, a panel may not overrule the decision of another panel. *United States v. Ruhe*, 191 F.3d 376, 388 (4th Cir. 1999).[3]

Greeson also contends that the district court failed to depart downward only because it mistakenly believed that it lacked the authority to depart and, therefore, its decision should be reviewed by this court. His argument is based on the district court's comments about our reversal of the downward departure in *United States v. Coble*, No. 00-4247, 2001 WL 431529 (4th Cir.), *cert. denied*, 534 U.S. 1023 (2001) (unpublished). Coble was convicted of obstructing the tax laws. He was in his 70's. The district court departed because it found that the offense was an act of aberrant behavior and because of a combination of discouraged factors: his age (Coble was apparently in good health), his good employment record, lack of criminal record, community ties, military service, and the emotional toll he had suffered from his battle against the Internal Revenue Service. *Coble*, 2001 WL 31529, at **4.

Greeson was 82 years old when he was sentenced. Two months earlier, in May 2002, he had a cancerous tumor removed from his colon. A letter to the probation officer from his doctor stated that he suffered from chronic obstructive pulmonary disease, degenerative disc disease, and diabetes which was controlled by diet. The district court was plainly troubled about Greeson's age and health and men-

---

[3]Greeson asks that the issue be reconsidered en banc.

tioned the reversal of the downward departure in *Coble*, adding, "I don't find any separation between this case and Mr. Coble's case. If I could, I would, but I simply can't find any, and I think that I'm bound to follow what the Court has said." After Greeson further alleged that he suffered from skin cancer on his head and arms, had been treated by surgery for glaucoma on his left eye, and needed the same surgery on his right eye, the court stated, "This is a very, very difficult case. . . . I think that judges ought to have some grounds, and if I had any, I would depart downward. I don't see any basis to do that here." Greeson argues that the district court mistakenly believed that it was bound by the outcome in *Coble* and thus without authority to depart downward.

We note that the sentencing court's authority to depart based on any factor that is not forbidden is well established. The policy statements that deal with age and physical condition as potential factors for departure each state that these factors are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," thus leaving open the possibility that a departure may be warranted in an unusual case. USSG §§ 5H1.1, p.s. (Age), 5H1.4, p.s. (Physical Condition). These factors are "discouraged" bases for departure, but may be the basis of a departure in an exceptional case. *United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996). Because the law is settled in this area, we interpret the court's comments in this case to mean that the court was unable to find that Greeson's case was an exceptional one which justified departure. We cannot conclude from the court's statement that it would prefer a wider latitude to depart that it mistakenly believed it lacked authority to depart. Therefore, we conclude that the court understood its authority to depart and exercised its discretion not to depart.

Accordingly, we affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*